561 P.2d 20 (1977)
In re the MARRIAGE OF Theresa L. BAIER, Appellee, and
George R. Baier, Appellant.
No. 76-318.
Colorado Court of Appeals, Div. 3.
February 10, 1977.
*21 Overholser & Slee, Andrew J. Slee, Montrose, for appellee.
Brooks, Miller & Brooks, Ralph E. Miller, Montrose, for appellant.
Selected for Official Publication.
RULAND, Judge.
George Baier (Husband) appeals from a decree dissolving his marriage with Theresa Baier (Wife) entered by the trial court under the Uniform Dissolution of Marriage Act, § 14-10-101 et seq., C.R.S. 1973. We affirm.

I. Finality of the Decree for Purposes of Appeal
Wife filed a petition in the district court seeking dissolution of the marriage, custody of the minor children of the parties, child support, and division of marital property. Husband denied that the marriage was irretrievably broken. Thereafter an evidentiary hearing was held concerning the status of the marriage, and the trial court subsequently entered findings of fact and granted the decree at issue here. The other issues raised by Wife's petition were reserved for future determination. However, the trial court entered judgment making the decree final pursuant to C.R.C.P. 54(b).
We consider first whether the decree may be appealed at this stage of the proceedings even though other issues remain in the case for future resolution. We conclude that the appeal is proper.
Section 14-10-105, C.R.S. 1973, provides that the Colorado Rules of Civil Procedure apply to dissolution proceedings except as "otherwise specifically provided" in the Act. Pursuant to § 14-10-120, C.R.S. 1973, a decree of dissolution of marriage is "final" when entered, subject to the right of appeal. We view these sections of the Act as authorizing the trial court to enter an order pursuant to C.R.C.P. 54(b), making the decree final for purposes of appeal, and thus we hold that, upon entry of an order under C.R.C.P. 54(b), a decree of dissolution may be appealed prior to entry of permanent orders on the issues of child custody, support, and division of property.

II. Sufficiency of the Evidence and the Trial Court's Findings
The following facts are not disputed. The parties were married in 1959 and six children were born as issue of the marriage. In approximately 1965 the parties encountered difficulties in their relationship, secured psychiatric counseling, and continued their marriage. However, during the ensuing five years the marital relationship deteriorated once again, but the Wife was unwilling to undertake further psychiatric counseling. The parties agreed to continue their marital status, but Wife refused to have further sexual relations with Husband.
In the fall of 1972, the parties acquired a farm where Wife resided with the children. Husband was employed in a city some distance from the farm, and he resided there in an apartment during the week and joined his wife and children on the farm most weekends. Thereafter Husband was transferred to a city nearer the farm, but because of the substantial travel involved in his employment, he resided in motels except for weekends and holidays.
Other evidence relative to the status of the marriage at the time of the hearing was disputed. In summary, Wife testified that when the parties were alone they usually quarreled, that they had been separated, in effect, for the past six years, and that she no longer trusted or even liked her husband. On the other hand, Husband testified to the effect that the parties had established a satisfactory relationship in their marriage, that Wife's difficulties could be resolved by psychiatric counseling, and that he continued to have a strong attachment to his wife. The parties also disagreed on what impact a divorce would have on their children.
Based upon this evidence, the trial court found that the parties had discontinued *22 their sexual relationship, that during the past five years there had been no mutual love and understanding between them, that the parties had basically maintained separate residences and lived under a type of separate maintenance agreement, and that there was no evidence that the situation would change. The court then determined that the marriage was irretrievably broken.
Husband presents numerous challenges to the findings of fact made by the trial court. First Husband claims that certain of the court's findings were either unsupported by or against the weight of the evidence. However, there is adequate evidence or inferences from the evidence to support the trial court's findings relative to the behavior of the parties and the status of the marriage, and hence those findings are binding on appeal. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336 (1970).
We likewise find no merit in Husband's contention that the findings are incomplete and demonstrate the failure of the court to consider all evidence. In the course of making its findings, it is unnecessary for the court to comment upon all evidence adduced at the hearing. Rather, where, as here, the findings are adequately explicit and informative as to the evidence relied upon by the trial court in reaching its decision, the findings are adequate for purposes of review. See Mowry v. Jackson, 140 Colo. 197, 343 P.2d 833 (1959).
Husband's principal contention is that any decree entered under the Act should recite the legitimate objectives of a marriage and should further state which goals have been irretrievably broken. It is Husband's position that one objective of a marriage, such as a satisfactory sexual relationship between the parties, may become unsalvageable, while other aspects of the marriage remain viable. For the marriage to be beyond redemption, he reasons that a substantial proportion of the objectives must be no longer attainable by the parties. We conclude that the Act contains no such requirement.
The issue of whether a marriage has been irretrievably broken is a question of fact to be resolved upon consideration of the facts and circumstances of each case, and the factors underlying that determination will necessarily vary from case to case. In re Marriage of Franks, Colo., 542 P.2d 845 (1975). While we recognize that many married couples share commonly accepted goals of marriage, we may not mandate that every marriage be evaluated by those standards. The Colorado Act is modeled on the Uniform Dissolution of Marriage Act. See 9 Uniform Laws Annot., Matrimony, Family & Health Laws 224 (1975 Supp.). Lack of specific criteria and the nebulous nature of the phrase "irretrievably breakdown" were recognized by the Commissioners on Uniform State Laws. However, that phrase was the end product of intense debate and careful consideration of accommodation of a variety of contradictory interests. Levy, Comments on Legislative History of Uniform Marriage & Divorce Act, 7 Fam.L.Q. 405 (1973). The focus of the Colorado legislature on section 305 of the Uniform Act, i.e., the "irretrievably broken" section, is evidenced by changes made in that section with respect to counseling; yet the General Assembly declined to make further changes and enacted this section without specifying guidelines for the determination of irretrievable breakdown. See 9 Uniform Laws Annot., supra. Hence, elucidating valid goals of marriage which must be either lost or beyond accomplishment before the marriage can be classified as irretrievably broken would constitute an amendment to the Act, and that power is reserved exclusively for the General Assembly. See Gallegos v. Tinsley, 139 Colo. 157, 337 P.2d 386 (1959).
Husband urges that lack of guidelines will enable dissolution to be effected merely by one party insisting that he or she "wants out" over the objection of the other party. During argument to this court, counsel for Husband conceded that an individual may not be forced to remain married, but reiterated that the court should not grant a decree of dissolution unless the statutory requirement of irretrievable *23 breakdown is satisfied and that such a determination could be made only after ample opportunity for reconciliation. Certainly unwarranted speed and intemperate decisions have been designated as pitfalls to avoid in "no fault" divorce proceedings. Ryan v. Ryan, 277 So.2d 266 (Fla. 1973). Merrill, Section 305: Genesis and Effect, 18 So.Dak.L.Rev. 538 (1973). However the General Assembly declined to include in the Colorado Act the language of the Uniform Act allowing the court to order a conciliation conference, and thus, in effect, determined that vesting discretion in the court to continue the case from 30 to 60 days was sufficient safeguard against hasty and insensate decisions.
We have considered Husband's other arguments relative to the findings of the trial court and find them to be without merit.

III. Exclusion of Psychiatrist's Letter.
Husband asserts that it was error for the trial court to exclude from evidence a letter received by Husband from a doctor who had been consulted by Husband and Wife 10 years earlier during a period of marital discord. Although the doctor had not been in touch with the parties during the ensuing years, he offered an opinion as to Wife's mental state and the possibility of reconciliation at this time. The trial court was correct in sustaining the objection to this letter as being remote in time and immaterial to the issue of reconciliation. See Echave v. City of Grand Junction, 118 Colo. 165, 193 P.2d 277 (1948).
Judgment affirmed.
SMITH and BERMAN, JJ., concur.