The ESTATE OF Robert F. BURFORD,
Deceased; R. Kelley Burford, Personal
Representative, Petitioner,

v.

Anne M. BURFORD, Respondent.

No. 95SC804.

Supreme Court of Colorado,
En Banc.

March 31, 1997.

Rehearing Denied April 28, 1997.

Dufford, Waldeck, Milburn & Krohn, L.L.P., William H.T. Frey, Laird T. Milburn, Grand Junction, for Petitioner.

Anne M. Burford, Denver, pro se.

Litvak Litvak and Mehrtens, P.C., Ronald D. Litvak, Timothy R.J. Mehrtens, Amy V. Williams, W. Troy Romero, Denver, for ami-
cus curiae Family Law Section of the Colorado Bar Association.

Justice BENDER delivered the Opinion of the Court.

This case is a consolidation by the court of appeals of two separate appeals involving a dissolution proceeding and a related probate claim. *In re Marriage of Burford,* No. 93CA1798 and *Burford v. Estate of Burford,* No. 93CA2070 (Colo.App. Oct. 19, 1995) (not selected for official publication) (*Burford II* ). Anne McGill Burford (wife) is the respondent, and the estate of Robert F. Burford (husband) is the petitioner in this court.

We granted certiorari review on the two issues requested: (1) whether the court of appeals erred in determining that a decree of dissolution of marriage, reserving issues of property division for a future trial, did not dissolve the marriage of the parties unless the decree was final for purposes of appeal, and (2) whether the court of appeals erred in applying the doctrine of judicial estoppel to the husband's claim in this appeal.[1]

The court of appeals invoked the doctrine of judicial estoppel to preclude the husband's estate from asserting the position that the decree of dissolution granted by the district court was final to determine marital status. The husband had argued in an earlier appeal that the decree of dissolution was not final for purposes of appellate review, and his argument had been adopted by the court of appeals. *See In re Marriage of Burford,* No. 93CA11 (Colo.App. Apr. 8, 1993) (ordering dismissal of appeal without prejudice) (*Burford I* ). The court of appeals in the present case determined that the husband's estate was asserting a legal position inconsistent with the earlier position the husband successfully asserted in *Burford I.* Accordingly, the court of appeals deemed the dissolution decree to be not final, vacated the decree and

---

1. The certiorari issues were framed as follows:
   (1) whether the court of appeals erred in concluding that a decree of dissolution of marriage, reserving issues of property division for a future trial, did not dissolve the marriage of the parties unless the decree was final for the purposes of appeal; and (2) whether the court of appeals erred in applying the doctrine of judicial estoppel, without any factual basis to do so, to preclude the Estate from arguing that a decree of dissolution of marriage is final as to the status of the parties merely because Mr. Burford's counsel had previously argued that the decree was not final for purposes of appeal because it had not been certified as a final order under C.R.C.P. 54(b).

the orders of the district court, and reversed the order of the probate court denying the wife's statutory claims against the estate as a surviving spouse.

We conclude that the doctrine of judicial estoppel does not apply to the facts of this case. We hold that the decree of dissolution dissolved the marriage of the parties even though the decree was not final for purposes of appellate review. We hold that the district court's bifurcation of the proceedings, deferring the permanent orders hearing until after the evidentiary hearing and decree dissolving the marriage, was properly based upon a finding of fact that the bifurcation was "necessary in the best interests of the parties." We therefore reverse the court of appeals' decision in *Burford II,* and we remand this case to the court of appeals for consideration of the remaining issues that were raised by the parties in *Burford II* but are not addressed in this opinion.

### I.

The husband initiated this action for dissolution of marriage in 1991. A hearing on the dissolution decree and permanent orders was set for October 29, 1992. The parties appeared as scheduled, and the wife moved to continue the hearing, claiming that because the husband had failed to comply with discovery demands, she was not prepared to participate in a meaningful property division hearing.

The district court, on its own motion, suggested a bifurcation of the proceedings pursuant to section 14–10–106(1)(b), 6B C.R.S. (1987),[2] allowing entry· of the dissolution decree but deferring resolution of the financial matters (maintenance and permanent orders) to a later date. The wife objected to bifurcation of the proceedings, but stipulated to the date of the hearing on the decree as the appropriate date to value the marital property. The district court overruled the wife's objection, finding that the facts of the case constituted exceptional circumstances and that bifurcation was "necessary in the best interests of the parties." Three days later, the district court heard testimony from the husband on the marital history, the date of separation, and his contention that the marriage was irretrievably broken. The wife, after being given an opportunity by the court to testify in opposition to the husband's testimony, declined. The district court then found the marriage was irretrievably broken and entered a decree dissolving the marriage.

The wife appealed the district court's order to bifurcate the proceedings. She also appealed the district court's entry of the dissolution decree on the grounds that the unlawful bifurcation order undermined the validity of the decree. The wife did not seek appellate review of the dissolution decree by alleging that it was jurisdictionally defective, nor did she seek appellate review of the decree by challenging the district court's finding that the marriage was irretrievably broken. *See* § 14–10–106(1)(a), 6B C.R.S. (1987);[3] § 14–10–110(1), 6B C.R.S. (1987).[4] The hus-

---

**2.** Section 14–10–106(1)(b), 6B C.R.S. (1987), provides in pertinent part:

In connection with every decree of dissolution of marriage and to the extent of its jurisdiction to do so, the court shall consider, approve, or make provision for ... the maintenance of either spouse, and the disposition of property; but the entry of a decree with respect to ... maintenance, or disposition of property may be deferred by the court until a time subsequent to the decree of dissolution of marriage upon a finding that such deferral is necessary in the best interests of the parties.

**3.** Section 14–10–106(1)(a), 6B C.R.S. (1987), provides:

The district court shall enter a decree of dissolution of marriage when:
(I) The court finds that one of the parties has been domiciled in this state for ninety days

next preceding the commencement of the proceeding;
(II) The court finds that the marriage is irretrievably broken; and
(III) The court finds that ninety days or more have elapsed since it acquired jurisdiction over the respondent either as the result of process pursuant to rule 4 of the Colorado rules of civil procedure or as the result of the act of the respondent in joining as copetitioner in the petition or in entering an appearance in any other manner.

**4.** Section 14–10–110(1), 6B C.R.S. (1987), provides:

If both parties by petition or otherwise have stated under oath or affirmation that the marriage is irretrievably broken or one of the parties has so stated and the other has not denied

band moved to dismiss the appeal for lack of jurisdiction on the grounds that the orders did not constitute a final judgment pursuant to the Colorado Appellate Rules. Relying on C.A.R. 1[5] and C.A.R. 3(d),[6] the husband argued that the dissolution was not final for purposes of appeal because all issues had not been resolved and because the trial court had not certified the dissolution action as final pursuant to C.R.C.P. 54(b).[7]

The court of appeals directed that unless the wife could obtain certification under C.R.C.P. 54(b), her appeal would be dismissed. The husband opposed the wife's effort to obtain C.R.C.P. 54(b) certification from the district court, arguing that since permanent orders dividing assets and liabilities between the parties had not been entered, final judgment should not be certified under C.R.C.P. 54(b). The wife, in response to the husband's motion to dismiss, cited section 14–10–120(1), 6B C.R.S. (1987), which provides, among other things, that "[a] decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal." The husband did not reference or rely upon this statute in that proceeding.

The district court agreed with the husband's position by refusing to certify the judgment as final under C.R.C.P. 54(b). The husband then argued to the court of appeals that the wife's appeal should be dismissed because there was no final judgment certified under C.R.C.P. 54(b). The court of appeals agreed and dismissed the wife's appeal without prejudice.

After the dismissal of *Burford I*, the husband died and the district court proceeded to determine permanent orders. The wife objected to the district court's jurisdiction, arguing that the court lost jurisdiction upon the husband's death because the decree of dissolution was not final. The district court ruled that the decree dissolving the marriage was final when entered and concluded that the dissolution proceeding did not abate upon the husband's death. The district court then determined the remaining issues.

After the entry of permanent orders by the district court, the wife filed probate claims against the husband's estate, asserting that she was his surviving spouse. The probate court, relying on the dissolution decree, concluded that the wife was no longer married to the husband at the time of his death and denied her claims.

The wife appealed the judgments of the district court and the probate court on numerous grounds. The wife argued to the court of appeals that the decree of dissolution was not final and did not have res judicata effect. The husband's estate, through different counsel, asserted that pursuant to section 14–10–120(1) a dissolution decree is final when entered "subject to the right of appeal" and should be given full force and effect for res judicata purposes "unless and until the effectiveness of these orders is stayed as a part of the appeal." The estate pointed out that at no time did the wife either obtain a stay of the dissolution decree or challenge the district court's determination that the

---

it, there is a presumption of such fact, and, unless controverted by evidence, the court shall, after hearing, make a finding that the marriage is irretrievably broken.

5. C.A.R. 1(a)(1) provides in pertinent part:

An appeal to the appellate court may be taken from:
A final judgment of any district, superior, probate, or juvenile court in all actions or special proceedings whether governed by these rules or by the statutes . . . .

6. C.A.R. 3(d) provides in pertinent part:

The notice of appeal shall set forth:
. . . .
(2) A brief description of the nature of the case including:

. . . .
(C) Whether the judgment or order resolved all issues pending before the trial court including attorneys' fees and costs; [and]
(D) Whether the judgment was made final for purposes of appeal pursuant to C.R.C.P. 54(b). . . .

7. C.R.C.P. 54(b) provides in pertinent part:

When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim or third-party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of the judgment.

marriage was irretrievably broken. The husband's estate told the court of appeals:

> As utilized in the doctrine of *res judicata* a "final judgment" can include an adjudication in another action that is sufficiently firm and stable to be accorded conclusive effect, even though not yet final for purposes of appeal. Restatement (Second) of Judgments, § 13.... The determination that a marriage has been irretrievably broken and is dissolved, with the dissolution court retaining jurisdiction only to consider property settlement and maintenance, results in a judgment of dissolution ... [which] should be given conclusive effect in any subsequent litigation concerning the marital status.

In applying the doctrine of judicial estoppel, the court of appeals assumed that a dissolution decree which was not final for appellate review was not final to determine the marital status of the parties. The court considered the threshold issue of whether the district court retained jurisdiction upon the husband's death, and applied the doctrine of judicial estoppel to preclude the husband's estate from asserting that the dissolution decree was final for the purpose of dissolving the marital status of the parties. The court of appeals found that the dissolution decree did not dissolve the marriage, and it overturned the rulings of both the district court and the probate court. The court of appeals did not decide the issue of whether the district court's bifurcation order was "necessary in the best interests of the parties."

We discuss first the application of the doctrine of judicial estoppel, and second, the finality of a dissolution decree which is not certified as a final order for appellate review.

## II.

■ The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, has been accepted in Colorado, but not extensively discussed. It is an equitable doctrine by which courts require parties to maintain a consistency of positions in the proceedings, assuring promotion of truth and preventing the parties from deliberately shifting positions to suit the exigencies of the moment.

*See generally* Melville M. Bigelow, *A Treatise on the Law of Estoppel* 783–90 (6th ed. 1913). The doctrine prevents a party from asserting inconsistent positions in the same or related litigation which may result in multiple recovery for that party or defeat a legitimate claim for recovery made by the opposition. "The concern [of the doctrine] is to avoid unfair results," and the common law applications of the doctrine reflect expectations of fair dealing. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (1981).

Historically, decisions adopting this doctrine require a party to advance an initial theory upon which the court rests its judgment. Absent a reasonable explanation, the prevailing party should not be permitted to obtain an unfair advantage by subsequently pursuing a contradictory theory against the same party:

> The rule we apply here need be and is no broader than this. A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that [sic] playing "fast and loose with the courts" which has been emphasized as an evil the courts should not tolerate. And this is more than [sic] affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair advantage.... At the same time, ... "each case must be decided upon its own particular facts and circumstances."

*Scarano v. Central R.R. Co.,* 203 F.2d 510, 513 (3d Cir.1953) (citations omitted) (employee precluded from seeking reinstatement to his job after successfully recovering thirty days earlier for an on-the-job injury resulting in long-term disabilities).

Fact patterns under which the doctrine has been invoked "are probably not reducible to any general formulation of principle." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167

(4th Cir.1982). Judicial estoppel should not apply in situations when collateral estoppel, equitable estoppel, or the requirements of election of remedies or theories would apply. *See id.* at 1167–68. Because the thrust of the doctrine is to prevent the use of "intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice," *Scarano,* 203 F.2d at 513, merely advancing inconsistent or alternative pleadings is not sufficient to invoke the doctrine. To the contrary, inconsistent pleadings are expressly approved by C.R.C.P. 8(e)(2), subject to the procedural safeguard provided by C.R.C.P. 11.[8] Courts should exercise care in the application of judicial estoppel so as not to curtail or infringe upon the right and the accepted practice of a litigant to plead and argue inconsistent and alternate theories. *See Allen,* 667 F.2d at 1167.

Colorado has applied this equitable doctrine to "preclude a [prevailing] party, as a matter of law, from adopting a legal position which conflicts with an earlier position taken in the same or related litigation." *Lyons Sav. & Loan Ass'n v. Dire's Lock and Key Co.,* 885 P.2d 345, 348 (Colo.App.1994) (citing *Peters v. Peters,* 82 Colo. 503, 261 P. 874 (1927)). The court of appeals in *Lyons* discussed the modern formulation of judicial estoppel, stating that the doctrine requires the party against whom estoppel is applied to have successfully asserted the contradictory position in an earlier proceeding. *See Lyons,* 885 P.2d at 349. If the court has not adopted the earlier contradictory position, then the integrity of the judicial process is not impugned, the prevailing party has not obtained an unfair advantage in the proceedings, and there is no risk of an inconsistent result. *See id.*

The *Lyons* court, adopting the rationale of other jurisdictions, held that judicial estoppel should not apply when the initial position taken by the party was the result of a good

faith mistake rather than an intentional effort to mislead the court. *See id.; see also Johnson Serv. Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973) ("[B]ecause the rule looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where [the assertions] were based on inadvertence or mistake.").

The test to determine whether the two positions are contradictory is whether they are "totally inconsistent—the truth of one must necessarily preclude the truth of the other." *Department of Trans. v. Coe,* 112 Ill.App.3d 506, 68 Ill.Dec. 58, 60, 445 N.E.2d 506, 508 (1983); *see also McClintock v. McCall,* 214 Kan. 764, 522 P.2d 343, 346 (1974) (holding the doctrine inapplicable where the party merely added facts to a subsequent affidavit). Care should be taken not to overlook reasonable grounds for a party changing positions based on new information because a "superficial inconsistency must not be allowed to obscure an underlying consistency." 18 Wright et al., *supra,* § 4477.

▪ To summarize, while the doctrine of judicial estoppel eludes precise definition, we hold that, at a minimum, the following five circumstances are required for the doctrine to apply: first, the two positions must be taken by the same party or parties in privity with each other; second, the positions must be taken in the same or related proceedings involving the same parties or parties in privity with each other; third, the party taking the positions must have been successful in maintaining the first position and must have received some benefit in the first proceeding; fourth, the inconsistency must be part of an intentional effort to mislead the court; and fifth, the two positions must be totally inconsistent—that is, the truth of one position must necessarily preclude the truth of the other.

---

**8.** C.R.C.P. 11 provides in pertinent part:
Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and

belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

Applying these five requirements to this case we conclude that two distinct positions were taken by the husband and by the husband's estate, that the positions were taken in related proceedings, and that the husband prevailed in the first proceeding as a result of the position he initially asserted. However, we find no evidence in the record to satisfy the fourth requirement, that the positions asserted by the husband and his estate were part of an intentional effort to mislead the court. We also conclude that the fifth critical requirement, that the two positions be totally inconsistent, has not been met. We find that the two positions, the first taken by the husband and the second by the husband's estate, are not totally inconsistent such that the truth of one would preclude the truth of the other. The integrity of the judicial process has not been compromised, and notions of fairness do not dictate application of the equitable principle of judicial estoppel.

The court of appeals determined that the husband and his estate advanced inconsistent positions regarding the finality of the dissolution decree. We disagree.

Examination of the pleadings filed by the husband in *Burford I* in support of his motion to dismiss the wife's appeal of the district court's bifurcation order, which included the dissolution decree, reveals that the husband's arguments were based upon the Colorado Appellate Rules, which require a final judgment resolving all issues pending before the dissolution court. *See* C.A.R. 3(d)(2)(C). The husband argued that the bifurcation order, which included the dissolution decree, was not final for purposes of appeal because the district court's orders did not resolve all of the issues pending before it. In *Burford I,* the court of appeals acknowledged the need for the district court's orders to be deemed final for purposes of appeal. It instructed the wife to obtain an order in compliance with C.R.C.P. 54(b) and to file this order with the court of appeals or the appeal would be dismissed. Absent C.R.C.P. 54(b) certification by the trial court, a judgment which disposes of fewer than all the claims in an action may not be appealed.

The wife then moved the district court for entry of an order certifying that the bifurcation order she sought to appeal, which included the resulting divorce decree, was final pursuant to C.R.C.P. 54(b). The husband opposed this certification request and reiterated the argument he made to the court of appeals in *Burford I* that the bifurcation order entered by the district court was not final for purposes of appellate review because all issues in the dissolution action, namely property settlement and maintenance, had not been resolved. Significantly, the husband did not argue to the district court that the dissolution decree was not a final order dissolving the marital status of the parties.

The district court refused to certify the bifurcation order, which included the dissolution decree, as appealable under C.R.C.P. 54(b) because permanent orders had not been entered. We note that the wife's appeal neither questioned the decree on the ground that it was jurisdictionally defective, nor challenged the district court's finding that the marriage was irretrievably broken.

In *Burford II* the court of appeals assumed for purposes of its opinion that section 14–10–120(1), which provides that a decree of dissolution is "final when entered, subject to the right of appeal," was intended to create an exception to the general rule that no order of the trial court which disposes of less than an entire claim can be finalized under C.R.C.P. 54(b).

By making this assumption and stating that the husband's counsel failed to bring this statutory section to the attention of the court, the court in *Burford II* leaves the impression that had the husband's counsel cited this section, then the court in *Burford I* might have decided the first appeal differently. We point out that section 14–10–120(1) was in effect when *Burford I* was decided, and the wife cited this statute to the court.

Our review of the record indicates neither evidence of bad faith on the part of the husband's counsel nor any attempt by the husband's counsel to mislead the court. In *Burford I,* the only assertions regarding finality that the husband's counsel made to the district court and to the court of appeals concerned the finality of the bifurcation or-

der for purposes of appellate review based upon the rules of appellate procedure. In *Burford II*, the husband's estate argued that the Restatement (Second) of Judgments § 13 (1982) provides that finality of a judgment may have different meanings depending upon the purpose asserted. The estate asserted that the decree of dissolution was final for the purpose of determining whether the marriage was irretrievably broken, and that the decree should be given conclusive effect by appellate courts. The estate pointed out that a "final judgment can include an adjudication in another action that is sufficiently firm and stable to be accorded conclusive effect, even though not yet final for purposes of appeal." Because the husband and his estate referred to "final orders" in two distinct and different contexts, their positions were not totally inconsistent.

The court of appeals in *Burford II* relied heavily on *Peters v. Peters*, 82 Colo. 503, 261 P. 874 (1927), in its application of judicial estoppel. We conclude that the court's reliance on *Peters* is erroneous.

In *Peters*, a woman claiming to be the decedent's widow obtained letters of administration for his estate. When the decedent's children moved to revoke the letters, the county court[9] found that the couple had been married and issued an order denying the motion. The children appealed, and the woman successfully moved to dismiss the appeal, claiming, among other things, that the order denying the revocation of the letters was not a final judgment and did not determine heirship.

The woman petitioned for determination of heirship. The county court found that the issue of marital status was barred due to res judicata and thus awarded the woman one-half of the estate. The decedent's children then appealed to the district court, and the court determined that the woman was not the decedent's wife.

The woman sought review of the district court's determination that the previous court order denying the revocation of letters was final and binding with respect to her status

as heir to the decedent's estate. On review, this court applied the doctrine of judicial estoppel to preclude the woman from taking inconsistent positions in related litigation:

> Having obtained a dismissal of the appeal on the strength of her proposition that the denial of revocation was not a final judgment, *and did not determine heirship*, and so having taken advantage of that proposition of law, she cannot now repudiate it and claim that the order was a final judgment.

*Peters*, 82 Colo. at 507–08, 261 P. at 876 (emphasis added).

The woman in *Peters* initially successfully argued a position which she later contradicted, namely that the court's denial of revocation did not determine heirship in her husband's estate. These positions were totally inconsistent—the truth of the woman's earlier position precluded the truth of her later assertion.

In the case now before us, the husband's estate did not expressly contradict the position asserted by the husband in the first appeal. The husband did not argue in his motion to dismiss for lack of jurisdiction, or at any other time during the proceedings, that the dissolution decree was not a final determination of the parties' marital status. The husband relied on the Colorado Appellate Rules in his representations to both courts, arguing that the bifurcation order was not final for appellate review. Unlike the situation in *Peters*, the positions of the husband and his estate were not totally inconsistent and the truth of one position, that the bifurcation order and resulting dissolution decree were not final for the purposes of appeal, does not necessarily preclude the truth of the other, that the dissolution decree was final for the purpose of determining the parties' marital status.

The main function of judicial estoppel is to promote truth and fairness by precluding one party from obtaining unfair advantage by misleading the court. To equate finality for appellate review with finality of the marital

9. *Peters* originated in county court because, at that time, county courts possessed concurrent jurisdiction with district courts in probate ac-

tions. *See* § 5767 Compiled Laws of Colorado (1921).

status of the parties is to run the danger of permitting a superficial inconsistency to obscure an underlying consistency. A decree of dissolution may be considered final for purposes of determining the marital status of the parties, but not final for purposes of appellate review. Each concept of finality is rooted in different purposes and policies.

### III.

#### A.

■ We now turn to a discussion of finality of a dissolution decree under Colorado dissolution statutes. As a preliminary matter, we consider whether the trial court erred in bifurcating the proceedings, deferring the permanent orders hearing until after the evidentiary hearing regarding the dissolution of marriage. Section 14–10–106(1)(b) mandates that bifurcation of the proceedings may occur only if the district court finds that "such a deferral is necessary in the best interests of the parties." The district court in this case entered a specific finding that bifurcation of proceedings was "necessary in the best interests of the parties."

The district court stated, and we agree, that bifurcation should only be considered in exceptional cases. The district court determined that bifurcation was appropriate for the following reasons: the age of the husband, 69; the poor health of the husband and the possibility he might die before the permanent orders hearing was conducted, thereby enabling the wife to claim as a surviving spouse in his estate; the complexity and magnitude of financial issues; the extremely litigious nature of the parties (who had engaged in more discovery disputes than the judge had witnessed in his twelve years on the bench, and as a result, no actual discovery had occurred in the seventeen months since the filing of the dissolution petition); the assets of the estate were being dissipated by various fees; and the wife would not be placed at a disadvantage by the bifurcation order. These specific findings, which are supported by the record, establish that the deferral of the permanent orders until after a hearing on the decree of dissolution was

"necessary in the best interests of the parties." The district court's decision to bifurcate under these circumstances was not clearly erroneous. *See Mulhollen v. Mulhollen,* 145 Colo. 479, 358 P.2d 887 (1961) (findings of court with respect to jurisdiction of divorce action are questions of fact and will not be disturbed on review unless clearly erroneous). Therefore, the district court properly exercised its discretion, under these exceptional circumstances, in bifurcating the proceedings.

#### B.

■ We next consider the court of appeals' interpretation in *Burford II* of section 14–10–120(1), 6B C.R.S. (1987), that a dissolution decree must be final for purposes of appeal to be final to dissolve the parties' marriage. Section 14–10–120(1) provides:

> A decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal from the decree of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the decree which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal.

Relying on the quoted section of this statute, the court of appeals equated finality of the decree of dissolution for marital status with finality for purposes of appellate review.

The husband's estate and Amicus Curiae [10] argue that section 14–10–120(1) embraces two distinct types of finality associated with a decree of dissolution: finality for purposes of dissolving the parties' marriage, and finality for purposes of appeal which is to be determined pursuant to traditional appellate rules. They contend that the word "final" in this section defines when the decree is effective and that the adverbial phrase, "subject to the right of appeal," which is set off by a comma, clarifies that even though the decree effectively severs the marital relationship, the decree itself is still subject to judicial review. They argue that this interpretation of section

---

**10.** The Family Law Section of the Colorado Bar Association.

14–10–120(1) finds support in the plain meaning of the words in the statute, the history of the Uniform Marriage and Divorce Act (UMDA), and the decisions of other states interpreting the UMDA on this precise issue.

Our consideration of these arguments and our review of Colorado cases after the passage of the UMDA persuades us that the husband's estate and Amicus Curiae are correct in their interpretation of section 14–10–120(1). We hold that a decree of dissolution when entered by the district court is final to dissolve the marriage even when the district court refuses to certify the decree as a final judgment appealable under C.R.C.P. 54(b).

An action to dissolve a marriage is personal in nature, and the district court's authority in dissolution proceedings is governed by statute. The determination of the parties' marital status forms the heart of the dissolution proceeding. "[T]he court's power to issue orders relative to property and support is merely incidental to the primary object of dissolving the parties' marital status." *In re Marriage of Connell*, 870 P.2d 632, 633 (Colo. App.1994). Because the district court has authority to dissolve the marital relationship, it also has authority to enter orders dividing marital property. *See* § 14–10–113(1), 6B C.R.S. (1987).[11] When a party dies prior to the entry of a dissolution decree,

> the general rule of law is that a divorce action immediately abates, for the objects sought to be obtained by final decree already is accomplished by the prior death of one of the parties, and there remains no

status of marriage upon which a final decree of divorce may operate.

*McLaughlin v. Craig*, 117 Colo. 67, 71, 184 P.2d 130, 132 (1947).

In 1971, the General Assembly adopted the UMDA, significantly changing the existing divorce laws in Colorado. For example, Colorado's adoption of the UMDA instituted "no-fault" divorce, which requires only that the parties demonstrate "irretrievable breakdown" of the marriage in order to obtain a divorce. *See* § 14–10–106(1)(A)(II), 6B C.R.S. (1987). A second significant change is contained in UMDA section 314(a), which was drafted with the purpose of abolishing interlocutory decrees of dissolution and of providing that a dissolution decree is effective to terminate the marital status of the parties immediately upon entry of the decree. *See* U.M.D.A. § 314(a) cmt. (1970) (Section 314 was intended to abolish "interlocutory periods in those states which have them. The decree of dissolution ... will be effective when entered, subject to the right of appeal."). The precise words of section 314(a) of the UMDA were adopted by the General Assembly and enacted in section 14–10–120(1), 6B C.R.S. (1987).

Before adoption of the UMDA, Colorado's divorce statutes provided for an interlocutory decree which became a final order to dissolve the marriage only after the passage of six months.[12] Under the 1933 statute, when one party died before the six-month interlocutory period lapsed, the divorce action abated, and the court lost subject matter jurisdiction of

---

11. Section 14–10–113(1), 6B C.R.S. (1987), provides in pertinent part:

In a proceeding for dissolution of marriage ... or in a proceeding for disposition of property following the previous dissolution of marriage by a court which at the time of the prior dissolution of the marriage lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse his property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors....

12. Act of April 1, 1933, ch. 71, 1933 Colo. Sess. Laws 440–41, provided in pertinent part:

Section 1.... If ... a divorce ought to be granted, the court shall enter an interlocutory decree, providing that the parties to such ac-

tion shall be divorced six (6) months after the date of such interlocutory decree. During such six (6) months [sic] period the parties shall not be divorced and neither party shall contract another marriage during such period. During such period the Court may, upon motion or petition of either party to the action, or upon its own motion ... set aside such interlocutory decree. Such interlocutory decree shall be a final order as of the date of its entry....
....
Section 3. Six (6) months after the entry of an interlocutory decree, it shall be and become a final decree of divorce, unless such interlocutory decree shall have been duly set aside, or an appeal has been taken....

the case. *See Morris v. Propst,* 98 Colo. 213, 55 P.2d 944 (1936); *In re McLaughlin's Estate,* 117 Colo. 67, 184 P.2d 130 (1947); *see generally* Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 15.8 (2d ed. 1988).

We conclude that by adopting the identical language of section 314(a) of the UMDA in section 14–10–120(1), 6B C.R.S. (1987), the General Assembly intended to eliminate the six-month delay for a decree of dissolution to become effective and intended to terminate the marital status of the parties immediately upon entry of the decree of dissolution. In addition, the plain meaning of section 14–10–120(1) indicates that the decree of dissolution, when entered by the district court, severs the marital relationship at that time, but that the decree is still subject to judicial review under traditional rules of appellate procedure. The second sentence of this statute supports the General Assembly's intent to bring finality to the parties' marital status conclusively and quickly. An appeal that does not challenge the finding that the marriage is irretrievably broken permits the parties to remarry even when other rulings of the district court, such as custody, maintenance or financial issues,[13] are appealed. This second sentence of the statutory provision means that a party who does not appeal "the finding that the marriage is irretrievably broken admits the power of the trial court to dissolve the marriage. . . ." *In re Marriage of Smith,* 721 S.W.2d 782, 784 (Mo. App.1986). Section 14–10–120(1) permits a party to appeal the termination of the marital status, that is, the granting of the decree of dissolution, only when the party challenges the district court's findings that the marriage is irretrievably broken. In addition, we note that a party may challenge the granting of a decree by raising a jurisdictional defect in the proceedings. *See Cyr v. District Court,* 685 P.2d 769 (Colo.1984) (trial court possessed authority to issue 54(b) certification

for order dismissing a codefendant on jurisdictional grounds).

Our reading of section 14–10–120(1), that a decree ends the marital status effectively and finally when entered, even when the court does not certify the case as final for purposes of appeal, finds support in the statutes of other states that have adopted the UMDA. Missouri and Montana courts have held that procedural rules for appeal are not superseded by their statutory provisions which correspond to our section 14–10–120(1). *See Jamison v. Jamison,* 592 S.W.2d 181 (Mo.App. 1979) (legislature intended for a divorce decree to be divisible for purposes of finality); *State v. District Court,* 181 Mont. 59, 592 P.2d 153 (1979) (without Rule 54(b) certification wife could not appeal from the order dissolving marriage prior to entry of judgment on all issues). In addition, the Illinois Supreme Court held that the Illinois version of the UMDA section 314(a) was not intended to create an exception to the Illinois Rules of Appellate Procedure. *See In re Marriage of Lentz,* 79 Ill.2d 400, 38 Ill.Dec. 582, 403 N.E.2d 1036 (1980). In *Lentz,* the Illinois Supreme Court stated: "The purpose of such language is to ensure that the parties not be subject to an interlocutory period between the determination of the grounds for divorce and the effective date of the decree." *Id.* at 584, 403 N.E.2d at 1038. The *Lentz* court ruled that the express language of the statute indicates the validity of the dissolution decree for purposes of dissolving the marriage but at the same time shows that the language was not intended to encourage or permit an immediate appeal for every decree of dissolution.

Review of Colorado cases interpreting section 14–10–120(1) supports our holding today that a decree granting dissolution is final when entered and dissolves the marital status of the parties. In *Hubbard v. District Court,* 192 Colo. 98, 556 P.2d 478 (1976), a case where the proceedings were not bifur-

---

**13.** An implicit provision of a decree issued before the hearing on disposition of property is the date on which property to be divided will be evaluated. Property is evaluated as of the date of the decree where the decree precedes the hearing on disposition of property. *See* § 14–10–113(5), 6B C.R.S. (1987). The appropriate date to evaluate

property, like the other rulings of the court on financial issues, may be challenged by an appeal which does not also challenge the finding that the marriage is irretrievably broken. *See, e.g., In re Marriage of Thompson,* 706 P.2d 428 (Colo. App.1985).

cated, we held that the divorce decree was final to end the marital status where the husband died after the district court granted a new trial on the permanent orders, but not on the decree of dissolution. We said:

[W]hen the parties challenge only the permanent orders relating to marital property in their motions for a new trial, that portion of the decree dissolving their marriage remains unaffected and becomes final at the expiration of the time within which the parties can move for a new trial on that issue. In this case, the district court no longer had jurisdiction to set aside the decree after the parties failed to file a timely motion for a new trial on whether the marriage was irretrievably broken.

*Id.* at 102, 556 P.2d at 481.

■ Other Colorado decisions support the rule we announce, that an unappealed decree of dissolution is final when entered to determine the status of the parties and that abatement does not occur should one party die after the decree is entered. *See In re Marriage of Piper,* 820 P.2d 1198 (Colo.App.1991) (no abatement occurred when district court entered decree and permanent orders, after which the husband died and the wife appealed only financial issues); *In re Marriage of Lester,* 647 P.2d 688 (Colo.App.1982) (where dissolution decree was challenged by husband because wife was absent from dissolution hearing but informed the court through her attorney that the marriage was irretrievably broken, decree was held effective even though permanent orders had not yet entered upon wife's death); *In re Marriage of Rose,* 40 Colo.App. 176, 574 P.2d 112 (1977) (no abatement when district court entered dissolution decree, reserved property division for ten days, husband died within the ten-day period, and neither party contested the finding that the marriage was irretrievably broken).

■ Sound public policy supports our interpretation of section 14–10–120(1) to mean that an unappealed dissolution decree is final when entered by the court to determine the marital status of the parties. When parties to a dissolution challenge the status of the marriage, they must be able to rely upon the decree as conclusive. In cases where remarriage, imminent death, the need to set a property valuation date, or other compelling reasons exist, our holding expressly authorizes the district court to enter a binding dissolution decree and defer financial matters or custody issues until a later time. A decree of dissolution, when challenged on the basis that the marriage is not irretrievably broken or on jurisdictional grounds, may form a judgment disposing of less than the entire case and can be certified as final by the district court when the court in its discretion determines that an interlocutory appeal is appropriate. We point out that it is not uncommon for dissolution actions to last a number of years, for reasons such as crowded court dockets and complicated custody, maintenance, or property division issues. Authorizing the district court to enter an order severing the marital status permits a final resolution by allowing the parties to move forward with their lives. It permits certainty with respect to filing tax returns as a single individual or as a married person filing separately, and provides a bright line defining when the marital status of the parties bars testimony under section 13–90–107(a)(1), 6A C.R.S. (1987), which prohibits the examination of one spouse against the other spouse absent consent.

■ A party may appeal the decree of dissolution without the entry of permanent orders, provided that the party challenges the findings of the district court that the marriage was irretrievably broken and the district court has certified the decree of dissolution as final for purposes of appeal under C.R.C.P. 54(b). *See In re Marriage of Baier,* 39 Colo.App. 34, 36, 561 P.2d 20, 21 (1977) ("[U]pon entry of an order under C.R.C.P. 54(b), a dissolution decree may be appealed prior to the entry of permanent orders on [ancillary issues]."). Dissolution decrees which are challenged on the basis of a jurisdictional defect may also be appealed. *See Cyr,* 685 P.2d at 769. C.R.C.P. 54(b) certification is properly left to the "sound discretion of the trial court." *Biel v. Alcott,* 876 P.2d 60 (Colo.App.1993). For example, the district court may permit appeals which would not unduly delay the resolution of the proceeding or result in piecemeal appeals.

The district court may also prohibit appeals taken for the purpose of delay in order to obtain a tactical advantage concerning financial or custody issues.

In summary, we hold that section 14–10–120(1) provides that when a dissolution decree is entered by the district court, it is a final order concerning the marital status of parties even though the decree is not treated as final for the purposes of appellate review. We hold that a decree of dissolution granted in accordance with section 14–10–120 may be immediately appealed when one party challenges the findings of the district court that the marriage is irretrievably broken or contests the jurisdiction of the court, and the district court acting pursuant to its discretionary authority certifies the decree as a final order for purposes of appeal under C.R.C.P. 54(b).

### C.

■■■■ Applying our discussion of finality to the facts of this case, we note that the wife did not contest the findings of the district court that the marriage was irretrievably broken or challenge the granting of the decree on jurisdictional grounds. The wife was given an opportunity to testify at the hearing conducted by the district court for the purposes of dissolving the marriage and she declined. In *Burford I* the wife appealed the validity of the decree on the ground that the decree was invalid because the bifurcation order was unlawful. We hold that the district court's bifurcation order conformed to the mandate of section 14–10–106(1)(b), and we affirm the district court's decision to bifurcate the proceedings. We note that even if bifurcation were improper in this case, the decree would nevertheless terminate the marriage. The only remaining issue, whether the date of the decree was appropriate to fix the value of the marital property under section 14–10–113(5),[14] was eliminated when the wife stipulated to using this date as the valuation date. When the wife failed to challenge the decree of dissolution on either a jurisdictional basis or on the basis that the marriage was not irretrievably broken, the decree was final at the time it was entered. The marital status of the parties was dissolved; the parties were no longer husband and wife. Thereafter, when the husband died before the date of the permanent orders hearing, the dissolution action did not abate, and the district court properly maintained jurisdiction over the marital estate to conduct hearings to resolve financial matters raised in the dissolution proceedings. The probate court was correct in precluding the wife's claim in the husband's estate as a surviving spouse.

### IV.

We conclude that the doctrine of judicial estoppel does not apply to the facts of this case. We hold that the decree of dissolution dissolved the marriage of the parties even though the decree was not final for purposes of appellate review. We hold that the district court's bifurcation of the proceedings, deferring the permanent orders hearing until after the evidentiary hearing and decree dissolving the marriage, was properly based upon a finding of fact that the bifurcation was "necessary in the best interests of the parties." We therefore reverse the court of appeals' decision in *Burford II,* and we remand this case to the court of appeals for consideration of the remaining issues that were raised by the parties in *Burford II* but are not addressed in this opinion.

SCOTT and KOURLIS, JJ., do not participate.

---

**14.** Section 14–10–113(5), 6B C.R.S. (1987), provides:

> For purposes of this section only, property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree.