23CA1379 Marriage of Houston 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1379
City and County of Denver District Court No. 21DR30870
Honorable Demetria E. Trujillo, Judge

---

In re the Marriage of

Thuy Than Houston, n/k/a Thuy Than Nguyen,

Appellee and Cross-Appellant,

and

Matthewe Houston,

Appellant and Cross-Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

McGuire Law, Nathan M.J. Dowell, Englewood, Colorado, for Appellee and
Cross-Appellant

Taft Stettinius & Hollister LLP, Jordan M. Fox, Denver, Colorado, for Appellant
and Cross-Appellee

¶ 1   In this dissolution of marriage case between Matthewe Houston (husband) and Thuy Thanh Houston (wife), now known as Thuy Thanh Nguyen, husband appeals and wife cross-appeals the permanent orders regarding the property division. We affirm the judgment and remand the case to the district court to resolve wife's request for appellate attorney fees under section 14-10-119, C.R.S. 2024.

## I.   Background

¶ 2   After eleven years of marriage and two children, wife petitioned for dissolution in October 2021. At that time, husband was employed as Vice President of Operations for Slawson Exploration Company, Inc. (Slawson), where he had worked since 2008. In addition to his $700,000 annual base salary, he received monthly payments for overriding royalty interests (ORRI) in oil and gas wells owned by Slawson. Wife was a stay-at-home parent during the marriage.

¶ 3   The district court set a permanent orders hearing on August 24, 2022. At the outset, the hearing was continued to November 15, primarily due to the judge's impending reassignment to a

different docket. Over wife's objection, the court entered a decree dissolving the marriage.

¶ 4 On March 24, 2023, the district court entered written permanent orders. The court divided the marital estate disproportionately in husband's favor:

| Marital Asset/Debt | Marital Value | Wife's Portion | Husband's Portion |
|---|---|---|---|
| Marital Residence | $1,445,403 | | $1,445,403 |
| Vehicles | $69,110 | $34,830 | $34,280 |
| U.S. Bank Account #7765 | $118,392 | $59,196 | $59,196 |
| Key Bank Account #1803 | $612,464 | $612,464 | |
| Other Bank Accounts | $131,198 | $33,265 | $97,933 |
| Brokerage Accounts | $1,808,040 | $904,020 | $904,020 |
| Retirement Accounts | $855,160 | $427,580 | $427,580 |
| Post-Decree Spending | $161,885 | $125,872 | $36,013 |
| Liabilities | ($7,737) | ($7,737) | |
| TOTAL | $5,193,915 | $2,189,490 (42%) | $3,004,425 (58%) |

¶ 5 The district court also found that any ORRI payments in Slawson wells that vested during the marriage were marital property. The court determined that vesting occurred when a well was "completed," regardless of whether it had "paid out" by the August 24th dissolution decree.

2

¶ 6     The ORRI payments were categorized into three distinct groups based on where husband had directed the payments:

> 1. T&M Asset Management (T&M), from the date of the marriage to July 2021, when wife decided to petition for dissolution (Class T&M);
>
> 2. Matt Houston Class I, from August 2021 to August 2022, during the dissolution proceedings (Class I); and
>
> 3. Matt Houston Class II, from September 2022 forward, post-decree (Class II).

The court allocated the marital portion of the ORRI payments, 75% to husband and 25% to wife. It also appointed a receiver to handle the distribution of the ORRI payments, recognizing that without one, wife could not verify the correctness of those payments.

¶ 7     Additionally, the district court found that wife waived her right to spousal maintenance. But the court noted that while she did not receive her preferred overall property division, she was awarded a significant amount in marital assets, including future ORRI payments.

¶ 8     Although the district court later amended its permanent orders, those changes are immaterial to the issues on appeal.

## II. Analysis

¶ 9 The parties raise the following issues for our consideration. Husband contends that the district court erred by (1) improperly including unvested Class II ORRI payments in the marital estate and (2) dividing two marital bank accounts containing the parties' separate post-decree Class T&M and Class I ORRI payments. For wife's cross-appeal, she contends that (3) the district court improperly bifurcated the proceedings by dissolving the marriage some three months before dividing the marital estate and (4) disproportionately divided marital property in husband's favor.

### A. The Court Did Not Err by Bifurcating the Proceedings

¶ 10 We begin with wife's assertion that the district court erred by bifurcating the proceedings because it is potentially dispositive of this appeal. We disagree with her assertion.

¶ 11 Under section 14-10-106(1)(b), C.R.S. 2024, a district court may defer permanent orders after a dissolution decree, provided it finds such a deferral is necessary in the spouses' best interests. This option should be considered only in exceptional circumstances. *Est. of Burford v. Burford*, 935 P.2d 943, 951 (Colo. 1997). Even so, we will not disturb a court's decision to bifurcate

absent a showing of an abuse of discretion. *See id.* ("Therefore, the district court properly exercised its discretion, under these exceptional circumstances, in bifurcating the proceedings."). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 12    Here, the district court continued the permanent orders hearing scheduled for August 24 to November 15, primarily because of the judge's imminent transfer to a new docket. But the initial request for the continuance was made by wife on August 3, in which she argued that husband's belated disclosures of the ORRIs necessitated a continuance. Then, at the August 24 hearing, wife said that she was instead ready to proceed and was willing to withdraw her motion to continue. However, she also said that if they proceeded with the hearing, she wanted the court to assess sanctions against husband.

¶ 13    Husband then requested that the court enter the dissolution decree early to establish the stipulated values of marital assets and debts plus prevent further financial contributions to the marriage, specifically the upcoming ORRI payments. Wife countered that

entering the decree prematurely would cause her to lose ORRIs that "continue[] to vest," but the court proceeded with the decree.

¶ 14 Given that (1) the continuance was primarily due to the judge's reassignment; (2) the continuance was three months; (3) the marital assets and debts had already been established by stipulation in advance of the first hearing; and (4) the vesting of new ORRIs during wife's requested continuance would be unfair to husband, we cannot say that the court's decision to bifurcate the proceedings was manifestly arbitrary, unreasonable, or unfair. *See Burford*, 935 P.2d at 951; *see also In re Marriage of Lester*, 647 P.2d 688 (Colo. App. 1982) (no error in bifurcating decree and continuing hearing on property division).

¶ 15 Wife relatedly argues that the district court erred by shifting the burden to her to prove why the dissolution decree should not be entered on August 24. This argument, however, lacks sufficient development and is not supported by legal analysis. She references a statute and a single case without elaborating on their relevance to the facts of this case. Thus, we decline to address this undeveloped argument. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (appellate court will not consider an argument not supported by

legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also In re Marriage of Dean*, 2017 COA 51, ¶ 31 (appellate court will not consider arguments in a reply brief that seek to expand on contentions raised in an opening brief).

## B.     Property Division

¶ 16     The parties' remaining contentions are focused on the court's property division.  We address those contentions in turn.

### 1.     Standard of Review

¶ 17     A district court has great latitude to divide property equitably based on the facts and circumstances of each case, and we will not disturb its decision absent an abuse of its discretion.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 19; *see* § 14-10-113(1), 2024.  "The property division must be equitable, but not necessarily equal." *In re Marriage of Wright*, 2020 COA 11, ¶ 3; *see also In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988) ("The key to an equitable distribution is fairness, not mathematical precision.").  We review de novo the court's application of the law.  *Medeiros*, ¶ 28.

### 2. The Court Did Not Improperly Include the Class II Payments in the Marital Estate

¶ 18    Husband contends that the district court erred by improperly including unvested Class II payments in the marital estate and subsequently dividing them. We disagree.

¶ 19    In a dissolution proceeding, the district court sets apart the spouses' separate property and then divides the marital property. § 14-10-113(1). The court must first determine whether an interest constitutes "property" and then whether it's marital or separate. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). Marital property generally includes all property acquired by either spouse during the marriage. § 14-10-113(2); *Balanson*, 25 P.3d at 35-36.

¶ 20    In 2014, about four years into the marriage, husband had his ORRI payments retitled into the name of T&M, a jointly owned entity. However, after wife decided to file for dissolution in July 2021, husband had Slawson issue future ORRI payments from new wells solely in his name. This led to some payments continuing to flow into T&M (the Class T&M payments) and others directed solely to him (the Class I payments). After the dissolution decree was entered in August 2022, a third category of ORRI payments arose

8

when husband directed ORRI payments from new wells after that date into his name (Class II payments).

¶ 21    Husband argued to the district court that Slawson's unilateral control over its "bonus program," specifically the Class II payments, rendered any purported right to those payments unenforceable, reducing them to mere expectancies rather than vested interests. He asserted that until a well was completed *and* Slawson conveyed an interest, such as when a well yielded a payment, he had no enforceable right to Class II payments.

¶ 22    Wife, on the other hand, asserted that husband had an enforceable right to Class II payments immediately upon the completion of a well, regardless of whether it had yet yielded a payment. So according to her, any wells completed before the dissolution decree were fully vested, making subsequent Class II payments from those wells marital property.

¶ 23    The district court sided with wife, determining that husband, contingent on his continued employment with Slawson, had an enforceable right to Class II payments upon a well's completion, not its payout. To get there, the court found most persuasive husband's own admission in a December 2020 email to wife, where

9

he stated "Our ORRI's vest when a well is completed. We have earned the right to that ORRI at that time, but no money is received until payout." The court characterized this email as the "most compelling and credible" evidence. The court interpreted this statement to mean any wells completed before the dissolution decree, regardless of when payments were made, constituted marital property. The court ultimately ordered a 75/25 split of ORRI payments, including those from Class II.

¶ 24 Husband argues that ample evidence in the record compels the conclusion that the Class II payments were not marital property until they were paid out. For example, he points to a 2008 employment offer letter from Slawson, a 2011 Slawson letter "restating" the ORRI policy, a 2013 revision of the ORRI policy, and a 2022 Slawson letter, which purportedly show that Slawson had unfettered discretion over the ORRI payments or that such payments vested only after payout. And it's true that this evidence could support husband's position. For example, the 2013 ORRI policy says,

> For overrides after payout to the employee, . . .
> the override vests with the employee on the
> first of the month after the well is deemed to

10

> have paid out as determined by the Company.
> The employee must be in the employment of
> the Company on both the spud date on [sic]
> the date of the payout of the well to have the
> override vest.

¶ 25    But the problem with this argument is that husband points to only a portion of the conflicting evidence introduced at the hearing and asks us to reweigh that evidence in his favor.  That is not our role.  *See In re Marriage of Turner*, 2022 COA 39, ¶ 18 n.1 (noting that it "is within the bailiwick of the district court to determine the credibility" of the witnesses' testimony); *see also In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in [district] courts to weigh conflicting evidence . . . ."); *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (An appellate court may presume that the district court considered all of the evidence admitted.).

¶ 26    The court's finding that husband's right to Class II payments vested when the wells were completed during the marriage as long

11

as he remained employed by Slawson is supported by the record. *See In re Marriage of Huston*, 967 P.2d 181, 184 (Colo. App. 1998) (earnings or payments derived from work performed during the marriage is marital property, subject to equitable distribution upon dissolution); *see also Turner*, ¶ 18 n.1. Thus, we discern no error in the court's inclusion of Class II payments in the marital estate.

¶ 27     Additionally, husband argues that the appointment of a receiver should "be set aside," claiming that neither the receiver nor the court has the "authority" to dictate the timing or occurrence of his ORRI transfers or vesting. We decline to address this argument as it is undeveloped. *See Zander*, ¶ 27.

### 3.     The Court Did Not Improperly Divide the Bank Accounts

¶ 28     Husband also contends that the district court erred by dividing two marital bank accounts that held the parties' separate post-decree Class T&M and Class I payments. He reasons that the court's 75/25 split of those ORRI payment classes should have been applied to those bank accounts. We disagree.

¶ 29     The record reflects that US Bank account #7765, which contained post-decree Class T&M payments, had a value of

$159,473 at the time of the dissolution decree. At permanent orders, the court relied on the parties' stipulation that the account had a "current balance of $118,392 and [was] marital property," and divided the account equally. Key Bank account #1803, which contained post-decree Class I payments, had a value of $375,976 at the time of the dissolution decree. At permanent orders, the court again relied on the parties' stipulation that the account had a "current balance of $612,464 and [was] marital property," and it allocated the account to wife. And at the permanent orders hearing, the court confirmed with counsel that "all of the amounts and values [of the parties' accounts] are contained in the joint trial management [certificate] and I can essentially rely on those?" Husband's counsel confirmed the court's understanding.

¶ 30    Having stipulated to the classification and values of the disputed bank accounts, husband cannot now argue that the district court erred in this regard. *See In re Marriage of Farr*, 228 P.3d 267, 270 ("Having stipulated to [the resolution of an issue], husband cannot now take a position to the contrary.").

### 4. The Court Did Not Abuse its Discretion In Its Unequal Property Division

¶ 31    Wife contends that the overall property division, including the 75/25 split of the ORRI payments, was inequitable. Specifically, she asserts that the court failed to consider the factors in section 14-10-113(1) or explain its reasoning. We disagree.

¶ 32    In making an equitable division, the district court must consider all relevant factors, including, among other things, each spouse's contribution to the acquisition of the marital property as well as the contribution of a spouse as homemaker, the value of property each receives, and each spouse's economic circumstances at the time of division. § 14-10-113(1)(a)-(c); *In re Marriage of Evans*, 2021 COA 141, ¶ 50.

¶ 33    The weighing of these factors is within the district court's sound discretion. *In re Marriage of Powell*, 220 P.3d 952, 959 (Colo. App. 2009). The court is not required to make specific findings as to each factor so long as its findings allow us to determine that its decision is supported by competent evidence. *Collins*, ¶ 19.

¶ 34    In justifying the unequal property division, the district court made the following findings:

14

- Both parties contributed to the acquisition of marital property, but their contributions were not equal. *See* §14-10-113(1)(a).

- Husband was the primary breadwinner. *See id.*

- While wife stayed at home and raised the children, husband actively shared parenting responsibilities and contributed to the childcare and household tasks both before and after his workday. *See id.* Their childcare needs were also met by nannies, whose services were made possible by husband's earnings. *See id.*

- Husband received $519,672 in separate property. *See* § 14-10-113(1)(b).

- The property division granted wife over $2 million and 25% of the marital ORRI payments and husband $3 million and 75% of the marital ORRI payments. *See id.*

- Both parties would receive tens of thousands of dollars each month from their ORRI payments. *See id.*

- Although husband was in a better financial position than wife at the time of the division, he was far better situated prior to the marriage. *See* § 14-10-113(1)(c).

- While wife's current economic circumstances and future earning capacity are less favorable than husband's, the substantial assets awarded to her will ensure her financial stability, even if she chooses not to pursue employment. *See id.*

- Husband is likely to retire in the near future, and wife has considerable time left to pursue work. *See* § 14-10-113(1) (property division requires consideration of all relevant factors).

¶ 35    Those findings, which enjoy ample record support, establish that the district court considered all relevant factors. *See* § 14-10-113(1)(a), (c); *see also Evans*, ¶ 50. And those findings are sufficient to provide us with a clear understanding of its reasons for the property division. *See Collins*, ¶ 19. The question before us is whether the district court abused its discretion, not whether we would have reached the same property division on these facts. We

perceive no abuse of discretion on this record, and thus, we will not disturb the unequal yet equitable property division.

### III. Appellate Attorney Fees

¶ 36 Wife asks for her appellate attorney fees under section 14-10-119, based on the disparity in the parties' financial resources. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006) ("Section 14-10-119 empowers the [district] court to equitably apportion costs and fees between parties based on relative ability to pay."). Because the district court is better situated than we are to determine the factual issues regarding the parties' current financial resources, we remand mother's request for appellate attorney fees under section 14-10-119 to the district court. C.A.R. 39.1; *see also Gutfreund*, 148 P.3d at 141; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

¶ 37 Though he did not prevail, husband's appeal was not frivolous or groundless. We therefore deny wife's request for appellate attorney fees under section 13-17-102(4), C.R.S. 2024.

## IV.   Disposition

¶ 38     The judgment is affirmed, and the case is remanded to the district court to resolve wife's section 14-10-119 appellate attorney fees request.

JUDGE WELLING and JUDGE SCHUTZ concur.