The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 15, 2026

## 2026COA3

**No. 24CA2006, *In re Marriage of Carey* — Colorado Rules for Magistrates — Review of District Court Magistrate Orders or Judgments — Orders or Judgments Entered When Consent Not Necessary — Finality**

A division of the court of appeals addresses, for the first time in a published opinion, the interplay between (1) finality for purposes of district court review of a magistrate's decision resolving some, but not all, issues; and (2) finality for purposes of review by this court of a district court order or judgment. Also for the first time in a published opinion, the division addresses the application of the statutory ninety-one-day period during which a court may not enter a decree dissolving a marriage after acquiring jurisdiction over the respondent when the initial pleading in this case was a petition for invalidity rather than a petition for dissolution.

COLORADO COURT OF APPEALS                                    **2026COA3**

Court of Appeals No. 24CA2006
Chaffee County District Court No. 23DR30028
Honorable Dayna Vise, Magistrate
Honorable Amanda Hunter, Judge

In re the Marriage of

Paul Douglas Carey, deceased; Sarah Swenson as Personal Representative of
the Estate of Paul Carey,

Appellee,

and

Mary Elizabeth Surrena,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Moultrie, J., concurs
Lum, J., specially concurs

Announced January 15, 2026

Anderson Law Group, Thomas H. Wagner, Salida, Colorado, for Appellee

Anne Whalen Gill LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellant

¶ 1    Mary Elizabeth Surrena (wife) appeals the district court's judgment dissolving her marriage to Paul Douglas Carey (husband). Resolution of this appeal requires us, for the first time in a published opinion, to address the interplay between (1) finality for purposes of district court review of a magistrate's decision resolving some, but not all, issues or claims, as discussed in *People v. Maes*, 2024 CO 15; and (2) finality for purposes of review by this court of a district court order or judgment. We also address, again for the first time in a published opinion, the application of the statutory requirement that a decree dissolving a marriage may not be entered until ninety-one days after the commencement of a proceeding in a title 14 case that did not begin as a dissolution of marriage proceeding. Concluding that we have appellate jurisdiction and that the procedural prerequisites for dissolving the marriage were met, we affirm.

## I.    Background

¶ 2    The parties — who began dating in 2006 and had resided together since 2010 — were married on August 15, 2023 (the ceremonial marriage). On September 6, 2023, husband — who was terminally ill — filed a petition to declare the ceremonial marriage

invalid due to his alleged lack of mental capacity. Wife was personally served with the petition on September 28, 2023, and denied that husband lacked mental capacity. She also argued that she and husband were married under common law before the ceremonial marriage.

¶ 3    On November 14, 2023, husband filed a motion to bifurcate the issue of the validity of the marriage from the entry of permanent orders. In his motion, husband cited *Estate of Burford v. Burford*, 935 P.2d 943 (Colo. 1997), in which the supreme court concluded that a dissolution of marriage decree may be entered in advance of the entry of permanent orders in exceptional circumstances such as when the petitioning spouse is in failing health. In response, the magistrate ordered the parties to set a hearing on the validity of the marriage, stating that this "necessarily mean[t] this issue [was] bifurcated from any other future proceedings, such as permanent orders."

¶ 4    On January 5, 2024, the magistrate held a contested hearing on the validity of the parties' ceremonial marriage. At the close of evidence, husband's counsel, in light of husband's failing health, requested that the magistrate enter a decree dissolving the marriage

if she were to find the marriage valid. The magistrate found that the ceremonial marriage was valid and entered an order denying husband's petition (the validity order). After some discussion about her authority to enter a decree of dissolution in the absence of a petition for dissolution, the magistrate scheduled a contested hearing for two weeks later at which she would address the question of whether there was a pre-existing common law marriage and the requirements for entering a dissolution decree. The magistrate suggested that husband file a petition for dissolution "in the abundance of . . . caution." Husband did so immediately after the hearing.

¶ 5    At the conclusion of the second hearing, the magistrate determined that the parties were never common law married. The magistrate also found that the requirements for dissolving the ceremonial marriage had been met and that, given husband's illness, it was appropriate to enter a decree at that time but conduct a "later permanent orders hearing." On February 2, 2024, she memorialized her ruling on the common law marriage issue in a written and signed order (the common law marriage order) and a

separate written and signed decree of dissolution (the dissolution decree). Husband died twelve days later.

¶ 6    Wife petitioned under C.R.M. 7(a) (2024)[1] for district court review of the common law marriage order and the dissolution decree, arguing that the magistrate erred by finding that no common law marriage existed and that the dissolution decree did not comply with statute. Questioning whether the orders were final for purposes of C.R.M. 7(a) review, the district court purported to dismiss the petition but then proceeded to reach the merits and "affirmed" the magistrate's order.[2]

¶ 7    The magistrate then held a permanent orders hearing allocating the marital estate. The magistrate found that husband's assets were almost entirely separate property, which had not increased in value during the marriage. Ultimately, the magistrate allocated wife a portion of the marital estate valued at $8,815.

---

[1] Rules 3, 5, 6, 7, and 8 of the Colorado Rules for Magistrates have since changed. *See infra* n.4. Unless noted otherwise, we cite and discuss the pre-amendment version of these rules in effect at the time of the events at issue.

[2] Under the rules in effect at the time, the district court was permitted only to "adopt, reject, or modify" the order. C.R.M. 7(a) (2024). We read the district court's order as having adopted the magistrate's order.

## II.    Appellate Jurisdiction

¶ 8    Wife challenges the magistrate's (1) determination that the parties were not common law married before their ceremonial marriage and (2) authority to enter the dissolution decree at the time she did so.  First, however, we must determine whether these challenges are properly before us.[3]

### A.    Legal Framework

¶ 9    "A magistrate's order is subject to different forms of review depending on the nature of the proceeding."  *Maes*, ¶ 12.  On the one hand, "[w]hen a magistrate hears a matter in the place of a judge with the consent of the parties, a magistrate's decision is treated like a district court decision and may be appealed in the same manner under the Colorado Rules of Appellate Procedure." *Id.*  This appellate procedure applies in cases in which the parties

---

[3] Although neither party raises this issue, we have an independent duty to determine whether we have jurisdiction to hear a matter. *Allison v. Engel*, 2017 COA 43, ¶ 22, *overruled on other grounds by*, *Wolf v. Brenneman*, 2024 CO 31.

must consent to a magistrate.  C.R.M. 7(b).[4]  In proceedings under title 14 of the Colorado Revised Statutes, including invalidity and dissolution of marriage proceedings, the parties' consent is required only for a magistrate to "preside over contested hearings which result in permanent orders concerning property division, maintenance, child support[,] or allocation of parental responsibilities."  C.R.M. 6(b)(2) (2024).

¶ 10    A magistrate can preside over any other proceeding in such cases without receiving the parties' consent.  C.R.M. 6(b)(1)(A).  In such proceedings, a party must first petition the district court for review of the magistrate's order or judgment before filing an appeal with this court.  C.R.M. 7(a).

¶ 11    Significantly, however, what is reviewable by the district court under C.R.M. 7(a) is not the same as what is final for purposes of appeal to this court.  Under C.R.M. 7(a), a district court may review

---

[4] We note that the Colorado Rules for Magistrates recently changed significantly for magistrate orders issued on or after January 2, 2026.  In particular, there are no longer different avenues for appeal to this court depending on whether the matter was one that required the consent of the parties.  C.R.M. 7 (effective Jan. 2, 2026); Rule Change 2025(18), Colorado Rules for Magistrates (Amended and Adopted by the Court En Banc, Sept. 4, 2025), https://perma.cc/S7P6-9RVS.

6

"a final order or judgment of a magistrate," which means an order that "fully resolves an issue or claim." C.R.M. 7(a)(3); *see also Maes*, ¶¶ 18, 21 (concluding that, even though a magistrate's probable cause determination in a criminal proceeding does not end the prosecution, it nevertheless fully resolves an issue or claim and is thus subject to a petition for district court review under C.R.M. 7(a)).[5]

¶ 12    In contrast, absent a C.R.C.P. 54(b) order entering a final judgment as to one or more, but not all, claims, a district court's order or judgment (whether entered by a district court judge or entered by a magistrate and later reviewed by a district court judge) is not subject to appeal to this court until it resolves *all* claims for *all* parties, "leaving nothing further for the court pronouncing it to do except to execute the judgment." *Musick v. Woznicki*, 136 P.3d 244, 249-50 (Colo. 2006) (quoting *Civ. Serv. Comm'n v. Carney*, 97 P.3d 961, 967 (Colo. 2004)). "In dissolution proceedings, an order generally is not final and appealable until the district court has

---

[5] The 2026 rule change does not change this definition of final order. C.R.M. 7(c) (effective Jan. 2, 2026).

issued permanent orders resolving all outstanding issues between the parties . . . ." *In re Marriage of Wiggs*, 2025 COA 10, ¶ 9.

¶ 13    In short, the process of seeking district court review of magistrate orders for which no consent was necessary can be piecemeal, whereas appeals to this court generally are not.

### B.    Finality of the Magistrate's Orders

¶ 14    Relevant to this appeal, the magistrate entered four separate written orders on three different dates: the validity order, the common law marriage order, the dissolution decree, and permanent orders.[6]

¶ 15    The first three orders are all governed by C.R.M. 6(b)(1)(A), meaning the magistrate had authority to preside over the hearings that led to those orders without the parties' consent.  The petition for invalidity and the petition for dissolution clearly involved "Functions in [a Matter] Filed Pursuant to Colorado Revised Statutes Title 14."  C.R.M. 6(b).  And because the common law marriage issue arose in the context of an effort to invalidate or

---

[6] Neither party appealed the magistrate's resolution of husband's invalidity claim.  We include it in this discussion for the sake of completeness.

dissolve a marriage under title 14, it also falls under C.R.M. 6(b). *In re Marriage of Phelps*, 74 P.3d 506, 509 (Colo. App. 2003). Moreover, these orders are not "permanent orders concerning property division, maintenance, child support[,] or allocation of parental responsibilities." C.R.M. 6(b)(2). Thus, no consent was required for the magistrate to issue them.

¶ 16 Each of these orders, then, was subject to review by the district court if it "fully resolve[d] an issue or claim." C.R.M. 7(a)(3). In *Maes*, the supreme court explored what types of determinations resolve "an issue or a claim" even when the determination "is just a constituent part of the larger action." *Maes*, ¶ 19. It concluded that an issue is "[a] point in dispute between two or more parties." *Id.* (quoting Black's Law Dictionary 995 (11th ed. 2019)).[7] And a claim encompasses determinations that, if resolved in a party's favor, lead directly to that party "receiv[ing] a legal remedy." *Id.*

¶ 17 In light of this rubric, we conclude that the dissolution decree resolved a claim because it provided husband the remedy of

---

[7] This definition appears to be quite broad. We express no opinion on whether disputes not involved in this case, such as discovery battles, are "issues" for purposes of finality for district court review.

dissolving the marriage.[8]  The common law marriage order is a closer call.  On the facts before us, resolution of wife's common law marriage contention would not lead directly to a remedy; rather, it would simply establish the relevant date of the marriage, which would in turn be used to establish each party's rights in the ultimate dissolution proceedings.  That being said, it was clearly "a point in dispute between" husband and wife.  Thus, it was at least an issue.[9]

¶ 18    As to whether a magistrate's orders "fully resolve[]" this issue or these claims, C.R.M. 7(a)(3), the supreme court said that "an issue or claim is fully resolved when a magistrate no longer has the authority to revisit its determination," *Maes*, ¶ 21.  The case the court relied on for this proposition, *People in Interest of J.D.*, 2020

---

[8] Again, because the validity order is not before us, we do not address whether it resolved an issue or a claim.

[9] Of course, the resolution of a common law marriage dispute will often lead directly to a remedy for one party — the declaration that a marriage does or does not exist.  In those cases, the allegation of a common law marriage is likely best characterized as a claim.  Here, however, by the time the hearing on the existence of a common law marriage took place, the magistrate had already decided that the ceremonial marriage was valid, and resolution of the common law marriage question was not going to result in a determination that no marriage existed.

CO 48, involved not an issue of finality for purposes of district court review but, rather, the power of a magistrate to consider a motion to withdraw a plea. *Id.* at ¶ 1. In that context, the court discussed the scope of the rules restricting a magistrate's authority to reconsider their prior rulings. The court noted that "[o]nly final orders or judgments of a magistrate, which are those fully resolving an issue or claim, are reviewable by a district court judge under the rules, and only then after they are reduced to writing, dated, and signed." *Id.* at ¶ 12. The court distinguished the prohibition against a magistrate ruling on a petition for rehearing from a ruling on a motion to withdraw a plea prior to sentencing, saying the prohibition provision "necessarily impl[ies] that the order or judgment for which a *rehearing* is prohibited is the final order or judgment mandated at the conclusion of and resulting from a *hearing*." *Id.*

¶ 19    The court also noted that the magistrate's initial acceptance of the juvenile's plea was not a final judgment because a judgment of conviction consists of not only the recital of the plea but also the sentence. *Id.* at ¶ 13. Significantly, the court in *J.D.* suggested that the resolution of a presentencing motion to withdraw a plea might

not be appropriately considered as a reconsideration or modification of an earlier decision to accept the juvenile's plea at all; instead, it might be seen "simply as an order granting a motion for presentence relief expressly provided [to] the juvenile by court rule." *Id.* at ¶ 15. The court declined to definitively characterize such a ruling because, in any event, "it clearly did not amount to the granting of a petition for rehearing or otherwise constitute the review of a final order or judgment of the magistrate." *Id.*

¶ 20 We recognize that, in *Maes*, the supreme court distinguished *J.D.*, noting that a magistrate presiding over a criminal matter "loses jurisdiction after making a probable-cause finding." *Maes*, ¶ 22. But the supreme court could not have meant that the loss of the magistrate's jurisdiction is necessary for the magistrate's orders to be final. Such a requirement would be inconsistent with C.R.M. 7(a)(3)'s language defining finality as the full resolution of *an* issue or claim; if finality depended on the end of the magistrate's authority to act in the case, it would have to be pinned on the full resolution of *all* issues and claims.

¶ 21 In *Maes*, the court converted *J.D.*'s discussion of when a magistrate loses the authority to revisit their decisions to a holding

that this loss of authority is what defines the finality of the order instead of the other way around.  This analysis appears to put the cart before the horse or, at least, is circular: How do we determine if the magistrate has lost the authority to revisit their ruling?  By looking at whether it fully resolves the issue or claim.  And how do we determine that the ruling fully resolves the issue or claim?  By looking at whether the magistrate has lost the authority to revisit their ruling.

¶ 22     We resolve this apparent circularity by looking more closely at the full context of the discussion in *J.D.*  As we observed above, the supreme court noted in *J.D.* that the prohibition on a magistrate handling a petition for rehearing applies to a written, dated, and signed order entered "at the conclusion of and resulting from a *hearing.*"  *J.D.*, ¶ 12.  The common law marriage order and the dissolution decree were both written, dated, and signed at the conclusion of and resulting from a hearing.[10]  Thus, the magistrate

---

[10] There may be scenarios in which a magistrate enters an order that fully resolves an issue or claim without first conducting a hearing.  Because that did not happen here, we do not consider whether a hearing is always necessary for a magistrate's order to be final.

was without authority to revisit them. These orders fully resolved the issue of common law marriage and the claim for dissolution of the marriage, respectively. *See Maes*, ¶ 21. Consequently, each of these orders was ripe for district court review under C.R.M. 7(a).[11]

¶ 23    As for the permanent orders, the parties consented to the magistrate conducting the hearing. Specifically, the magistrate issued a case management order informing the parties that this hearing would be handled by a magistrate unless a party filed a timely objection. Because neither party filed an objection, the parties are deemed to have consented to the magistrate handling permanent orders. *See* C.R.M. 5(g)(2) (2024).[12] And because the permanent orders fully divided the marital estate and otherwise

---

[11] Had the district court actually dismissed the petition instead of ultimately ruling on the merits, that dismissal would have been erroneous.

[12] The case management order was issued more than a week before the hearing at which the magistrate addressed the common law marriage and the dissolution criteria were discussed. Thus, by not objecting when the magistrate presided over that hearing, the parties consented by their nonobjection. *See* C.R.M. 5(g)(2) (2024). Indeed, by not objecting when the magistrate presided over the invalidity hearing, the parties also consented to the magistrate handling the invalidity hearing. *See* C.R.M. 5(g)(1). But consent for those hearings is irrelevant because it was not required. *In re Marriage of Phelps*, 74 P.3d 506, 509 (Colo. App. 2003).

resolved all the remaining matters related to the end of the parties' marriage, that order brought all the issues and claims to a close.

## C.     Timeliness of the Appeal

¶ 24     The district court adopted the magistrate's first three orders (the validity order, the common law marriage order, and the dissolution decree) on June 5, 2024.  At that point, the issues of the existence and validity of the marriage, the date the marriage began, and the dissolution of the marriage were resolved.  But permanent orders had not been entered.  Accordingly, absent a valid order under C.R.C.P. 54(b), these orders were not final and appealable to this court until permanent orders were entered resolving the remaining issues.  But once the magistrate issued the permanent orders on September 27, 2024, that judgment and all the prior orders were final and appealable.  *See Musick*, 136 P.3d at 249-50; *Wiggs*, ¶ 9.  Because wife timely filed her appeal after the entry of that order, all the orders wife challenges are properly before us.

## D.     Justiciability

¶ 25     As mentioned above, husband died after the magistrate entered the dissolution decree but before the entry of permanent

orders.  Husband's estate was substituted for him in this case.  *See*

C.A.R. 43(a)(1).  When a party

> dies prior to the entry of a dissolution
> decree, . . . a divorce action immediately
> abates, [because] the object[] sought to be
> obtained by final decree already is
> accomplished by the prior death of one of the
> parties, and there remains no status of
> marriage upon which a final decree of divorce
> may operate.

*Burford*, 935 P.2d at 952 (quoting *McLaughlin v. Craig*, 184 P.2d

130, 132 (Colo. 1947)); *see also In re Parental Responsibilities*

*Concerning C.E.S.K.*, 2025 COA 51, ¶ 22 (applying the same rule to

allocation of parental responsibilities proceedings).  The supreme

court, in *Burford*, determined that a dissolution decree may

therefore be entered before permanent orders to avoid the issue

becoming moot as a result of the death of a party.  935 P.2d at 954.

¶ 26    According to the court in *Burford*, when a dissolution decree is

entered pursuant to section 14-10-120(1), C.R.S. 2025, it "ends the

marital status effectively and finally when entered, even when the

court does not certify the case as final for purposes of appeal."

*Burford*, 935 P.2d at 953.  Nonetheless, to appeal the dissolution at

this point, one must obtain a certification of the decree of

dissolution pursuant to C.R.C.P. 54(b) and challenge the court's findings that the marriage was irretrievably broken. *See Burford*, 935 P.2d at 955 (requiring C.R.C.P. 54(b) certification and a challenge to the court's determination that the marriage is irretrievably broken or the court's jurisdiction to make such a determination for the dissolution decree to be immediately appealable).

¶ 27 Wife could have immediately appealed the dissolution decree by first convincing the district court to certify the issue pursuant to C.R.C.P. 54(b) and challenging the court's determination that the marriage was irretrievably broken. Instead, wife waited until permanent orders were entered. Nothing in *Burford* suggests wife was prohibited from doing so. To the contrary, as the supreme court observed, "[a] decree of dissolution may be considered final for purposes of determining the marital status of the parties, but not final for purposes of appellate review." *Id.* at 951; *see also id.* at 953 ("[T]he plain meaning of section 14-10-120(1) indicates that the decree of dissolution, when entered by the district court, severs the marital relationship at that time, but that the decree is still subject

to judicial review under the traditional rules of appellate procedure.").

¶ 28    We conclude that, by filing a timely notice of appeal after the entry of permanent orders, wife may challenge the common law marriage order and the dissolution decree that were entered many months earlier.  We thus turn to the merits of wife's claims.

### III.    Standard of Review

¶ 29    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Dean*, 2017 COA 51, ¶ 8.  We accept the magistrate's factual findings unless they are clearly erroneous but review de novo the district court's and magistrate's conclusions of law.  *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1132 (Colo. 2010).

¶ 30    The determination of whether a common law marriage exists turns on issues of fact and credibility, which are matters within the district court's purview.  *LaFleur v. Pyfer*, 2021 CO 3, ¶ 50.  We review the court's factual findings for clear error and its common law marriage determination based on those findings for an abuse of discretion.  *Id.*

¶ 31    Similarly, when a district court determines that it is appropriate to bifurcate the entry of a decree of dissolution from the entry of permanent orders, we review the court's factual findings for clear error and its decision to bifurcate based on those findings for an abuse of discretion. *Burford*, 935 P.2d at 951 (After noting that the district court's findings were supported by the record, the supreme court held that "[t]he district court's decision to bifurcate under these circumstances was not clearly erroneous. Therefore, the district court properly exercised its discretion, under these exceptional circumstances, in bifurcating the proceedings." (citation omitted)).

¶ 32    A court abuses its discretion if its decision is based on a misapplication of the law or is manifestly unreasonable, arbitrary, or unfair. *In re Marriage of Nevedrova*, 2024 COA 112, ¶ 6. "In assessing whether a trial court's decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options." *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006).

¶ 33    Common Law Marriage

¶ 34    Wife argues that the magistrate abused her discretion by concluding that the parties were not common law married before their ceremonial marriage. We discern no error.

## A.    Relevant Law

¶ 35    Colorado recognizes common law marriage. *LaFleur*, ¶ 21. "[I]n a common law marriage, two persons create a valid marital relationship without the benefit of a legal marriage ceremony performed according to statutory requirements." *In re Marriage of J.M.H.*, 143 P.3d 1116, 1118 (Colo. App. 2006). "[C]ommon law marriage may be established by the mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement." *Hogsett v. Neale*, 2021 CO 1, ¶ 3.

¶ 36    A common law marriage finding depends on the totality of the circumstances. *In re Estate of Yudkin*, 2021 CO 2, ¶ 3. "The key question is whether the parties mutually intended to enter a marital relationship — that is, to share a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation." *Hogsett*, ¶ 49. Cohabitation alone is insufficient. *In re Estate of Wires*, 765 P.2d 618, 618-19 (Colo. App. 1988) (upholding

finding of no common law marriage when, although the parties lived together for seven years, they filed separate tax returns and they had discussed getting married but decided against doing so). The court may consider other factors, including the maintenance of joint banking and credit accounts; purchase and joint ownership of property; the filing of joint tax returns; evidence of joint estate planning, including wills; and symbols of commitment. *Hogsett*, ¶¶ 35, 55-56.

## B. Analysis

¶ 37 The magistrate found that no common law marriage existed because "there was no *mutual* agreement to enter a *marital* relationship." The magistrate further observed, "There may have been times in which [husband] colloquially and endearingly referred to [wife] as his wife, and that he outwardly displayed his love and affection and commitment to her as his partner, [but] the overwhelming evidence demonstrates that he intended *not* to be legally married to her . . . ."

¶ 38 Wife contends that the magistrate "went to considerable lengths to select snippets of testimony as compelling over testimony that supported a common law marriage," "discount[ed] [w]ife's son's

21

testimony," "ignored [husband's] daughter's motivation," and "weigh[ed] documents over the parties' conduct." These arguments do nothing more than ask us to reweigh the evidence, which we cannot do. "[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the [district] court." *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (quoting *In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003)). "[W]hen there is record support for the trial court's findings, its resolution of conflicting evidence is binding on review." *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. Put another way, we may disturb the magistrate's findings only if they have "no support in the record." *Thorburn*, ¶ 25.

¶ 39     And here, it cannot be said that the magistrate's findings have no record support. The magistrate credited testimony from husband's daughter, who was familiar with husband's strong desire to remain unmarried. Husband testified that he repeatedly marked himself as single on his tax returns. Wife testified that the parties maintained separate finances. And wife was not a beneficiary of

22

husband's will. In view of this record support, we cannot disturb the magistrate's factual findings.

¶ 40 The record further shows that the magistrate applied the proper legal standards to these findings. The magistrate explicitly and correctly recited the factors identified in *Hogsett.*

¶ 41 Because the factual findings have record support, the magistrate applied the correct legal standard, and the facts support her determination, she did not abuse her discretion by concluding there was no common law marriage.

¶ 42 Dissolution Decree

¶ 43 Wife argues that the dissolution decree is invalid for two reasons. First, she contends that the petition for dissolution was not properly filed or served. And second, she argues that the magistrate prematurely entered the decree before the statutory "cooling off" period had run. We address, and reject, these contentions.

¶ 44 Commencement of the Proceedings and Service of the Petitions

¶ 45 Wife contends that husband neither properly commenced a dissolution proceeding under section 14-10-107, C.R.S. 2025, nor properly served her under section 14-10-106, C.R.S. 2025. In

particular, she argues that the petition for invalidity did not contain the essential allegations enumerated in section 14-10-107. In addition, she argues that section 14-10-106 requires that the petition for dissolution be served on the respondent in compliance with C.R.C.P. 4, which generally requires personal service. *See* C.R.C.P. 4(e). Wife misreads the statutes and ignores the impact of the Colorado Rules of Civil Procedure.

### 1. Commencement of the Proceedings

¶ 46 All proceedings under article 10 of title 14 (including both invalidity proceedings and dissolution proceedings) "shall be commenced in the manner provided by the Colorado rules of civil procedure." § 14-10-107(1). Husband commenced this proceeding by filing his petition for invalidity. The court file reflects that husband personally served this petition on wife, and she does not contest that fact.

¶ 47 We acknowledge that husband's initial petition sought only to declare the marriage invalid and did not explicitly seek to dissolve the marriage in the event the court found the marriage valid. Nevertheless, the petition commenced a title 14 proceeding.

¶ 48 Wife's contention that husband "never sought to amend his pleadings" is belied by the record. As noted, at the conclusion of the hearing on the invalidity petition, husband asked the magistrate to enter a decree dissolving the marriage. This followed an exchange that occurred at the beginning of that hearing, in which husband explained that his request to bifurcate the proceedings was "kind of an alternative request" for dissolution in the event the court found the marriage to be valid. The magistrate correctly noted that she could not dissolve the marriage at that time, since there was no such request in the pleadings. However, she indicated she would address that issue at the next hearing (on wife's claim that the parties were common law married prior to the ceremonial marriage) and suggested that husband file a petition for dissolution.

¶ 49 In our view, husband's request amounted to an oral motion to amend the pleadings, which C.R.C.P. 15 permits. *See Rinker v. Colina-Lee*, 2019 COA 45, ¶¶ 39-42. Even when requested weeks after the initial filing, "a party may amend [their] pleading . . . by leave of court." C.R.C.P. 15(a). Indeed, in domestic relations cases, "motions to amend the petition . . . may be filed with the court at

any time." C.R.C.P. 16.2(c)(4)(A).[13]  And the magistrate granted that motion when she suggested that the petition be filed before the next hearing.  Husband did just that later that same day, filing a petition for dissolution that included all the required allegations enumerated in section 14-10-107.

¶ 50   Notably, such amendments are common.

> Not infrequently, an initial petition seeks a legal separation or a declaration of invalidity rather than a decree of dissolution of the marriage.  Often in these cases, a response is filed seeking a decree of dissolution of the marriage or the original petition is amended to request a dissolution decree.

19 Frank L. McGuane, Jr. & Kathleen A. Hogan, *Colorado Practice Series, Family Law and Practice* § 10:3, Westlaw (2d ed. database updated July 2025).  Thus, once husband filed the petition for dissolution, the matter was properly before the magistrate.

---

[13] To the extent wife posits that there must be a formal, written motion — or even an explicit invocation of C.R.C.P. 15 — she develops no argument and cites no authority on the point.  We do not address undeveloped arguments.  *In re Marriage of Humphries*, 2024 COA 92M, ¶ 31.

## 2. Service of the Dissolution Petition

¶ 51     That leads us to wife's closely related contention that she was not properly served with the petition for dissolution pursuant to C.R.C.P. 4, which she argues is required by section 14-10-106. Wife misreads the statute.

¶ 52     Initially, we note that wife cites section 14-10-106(1)(b) as requiring personal service of the petition for dissolution.  But this section does not mention service; instead, it directs the district court to address permanent orders "[i]n connection with every decree of dissolution of marriage or decree of legal separation." § 14-10-106(1)(b).

¶ 53     The provision referencing service of process under C.R.C.P. 4 is section 14-10-106(1)(a)(III).  But even that provision does not support wife's argument that service in this case was improper.  It merely identifies how jurisdiction over the respondent in a title 14 proceeding must be acquired.  As noted, when husband served the invalidity petition on wife pursuant to C.R.C.P. 4, service of process was complete for this title 14 proceeding.

¶ 54     Once the originating pleading is filed and jurisdiction is obtained, the service of subsequent pleadings and filings is

governed not by C.R.C.P. 4 but by C.R.C.P. 5. That rule permits service of an amended pleading through the Colorado Judicial Department's e-filing system. C.R.C.P. 5(b)(2)(D). Nothing in section 14-10-106 overrides this procedure for serving pleadings and other filings *after* the court acquires jurisdiction over the respondent.

¶ 55    The Colorado Judicial Department's case management system reflects that the petition for dissolution was electronically served on wife's counsel.[14] Wife does not contend otherwise. Thus, we conclude that wife was properly served with the petition for dissolution.

### C.    Ninety-One-Day Requirement

¶ 56    Wife also argues that the magistrate erred by not waiting ninety-one days from proper service of the petition for dissolution before entering the decree, as wife contends is required by section 14-10-106(1)(a)(III). Again, wife misreads the statute.

---

[14] We may take judicial notice of the contents of the court records in related proceedings. *People v. Sa'ra,* 117 P.3d 51, 55-56 (Colo. App. 2004).

28

¶ 57    Our primary duty in construing statutes is to give effect to the intent of the General Assembly.  "When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes." *Ronquillo v. EcoClean Home Servs., Inc.*, 2021 CO 82, ¶ 22 (quoting *Smith v. Jeppsen*, 2012 CO 32, ¶ 14).  "[We] construe words and phrases in accordance with their plain and ordinary meanings." *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 14.

¶ 58    By statute, a decree of dissolution of marriage may not be entered until at least ninety-one days have passed since the court "acquired jurisdiction over the respondent."  § 14-10-106(1)(a)(III).  Here, as noted, the court acquired jurisdiction over the respondent by personal service of the petition for invalidity on September 28, 2023.  Because the court therefore had jurisdiction over wife for 127 days before the dissolution decree was issued, the court's order aligned with the statute.

¶ 59    Further, to the extent wife contends that she had untimely notice of the dissolution request, the record again suggests otherwise.  Wife was aware of the original petition to invalidate.  And the facts underlying that request, as well as husband's position

29

during the hearing on that petition, unequivocally manifested husband's desire to extricate himself from the marital relationship. Thus, we discern no lack of notice.

### IV.   Disposition

¶ 60     The judgment is affirmed.

JUDGE MOULTRIE concurs.

JUDGE LUM specially concurs.

JUDGE LUM, specially concurring.

¶ 61    I agree with my colleagues' resolution of this appeal, but I write separately to express my concern about the implications of the finality conclusions that we are compelled to reach in light of the language of C.R.M. 7(a)(3) (2024) as interpreted by *People v. Maes*, 2024 CO 15.

¶ 62    It's no secret that the Colorado rules for magistrates have historically created substantial consternation for magistrates, judges, and attorneys — to say nothing of self-represented litigants. *See, e.g., In re Marriage of Matheny*, 2024 COA 81, ¶¶ 18-22; *In re Estate of Ybarra*, 2024 COA 3, ¶ 1; *In re Marriage of James*, 2023 COA 51, ¶¶ 11-26; *In re Marriage of Moore*, 107 P.3d 1150, 1150-51 (Colo. App. 2005); *In re Marriage of Phelps*, 74 P.3d 506, 508-09 (Colo. App. 2003).

¶ 63    The "issue or claim" language in C.R.M. 7(a)(3) adds to the procedural morass by mandating different rules of finality in magistrate proceedings than for proceedings before district court judges.  Thus, the exact same order — for example, an order entering a dissolution of marriage decree before permanent orders — is treated as final for purposes of district court review

when a magistrate enters it after a hearing but would not be final for purposes of review by this court if it had been entered by a district court judge.

¶ 64     Furthermore, we follow, as we must, the language in *People in Interest of J.D.*, 2020 CO 48.  That language compels us to conclude that an order fully resolves an issue or claim if it is written, dated, signed, and entered "at the conclusion of and resulting from a *hearing*" because that is the point at which the magistrate apparently loses authority to "rehear" the issue.  *Id.* at ¶ 12.  But that raises the potential for yet more disparate treatment.  For example, would the order entering the dissolution decree still fully resolve the claim if the magistrate had entered it without holding a hearing?  I do not purport to answer this question today because it isn't before us; it is merely one example of the type of question that will inevitably arise following this opinion.

¶ 65     Particularly in light of the extraordinarily broad definition of "issue" espoused in *Maes* and the changes in the magistrate rules that took effect on January 2, 2026, I anticipate that our opinion will generate significant uncertainty about the finality of magistrate orders.  In turn, I fear this will create an explosion of petitions for

review in our already overworked district courts by parties concerned about preserving their appellate rights. Or worse, parties will lose appellate rights if they fail to correctly navigate through an increasingly complex procedural maze. *See* C.R.M. 7(a)(11) (prohibiting appellate review absent a timely petition for district court review).[1]

¶ 66 For these reasons, I urge our supreme court to clarify how *Maes* and *J.D.* apply in domestic relations cases or (better yet) to revise the "issue or claim" language in the magistrate rules to maintain a consistent definition of finality across the court system.

---

[1] Effective January 2, 2026, this provision has become C.R.M. 7(*l*).