**In re MARRIAGE OF Kathleen A. MILLER, Petitioner,**

**and**

**Bradley W. Miller, Respondent.**

No. 94SC473.

Supreme Court of Colorado, En Banc.

April 29, 1996.

Wallace & Kling, P.C., Nancy L. Wallace, Fort Collins, for Petitioner.

Moore, Smith & Williams, P.C., Michael D. Liggett, Fort Collins, for Respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *In re Marriage of Miller*, 888 P.2d 317 (Colo.App.1994), the Colorado Court of Appeals affirmed the trial court's conclusion that certain employee stock options and shares of restricted stock owned by respondent Bradley W. Miller (the husband) constituted in part marital property for purposes of property division in a dissolution of marriage proceeding. The trial court determined that the employee stock options and restricted stock shares constituted marital property "based upon the ratio of the period that the parties were married during these respective options and grant in proportion to the entire length of the option or grant." Having granted the request of petitioner Kathleen A. Miller (the wife) for certiorari review of the court of appeals' decision, we affirm in part, reverse in part, and remand the case to the court of appeals with directions.

I

The parties were married on June 10, 1983. On November 17, 1988, November 16, 1990, and November 21, 1991, the husband received nonstatutory stock options from his employer, Hewlett–Packard Company (HP), pursuant to a corporate incentive compensation plan. Each option is subject to the terms and conditions set forth in a stock option agreement. Each agreement provides that on the first, second, third, and fourth anniversaries of the agreement the option is exercisable as to one-quarter, one-half, three-quarters, and all of the option stock, respectively. Each agreement further provides that all rights to exercise the option will terminate upon the termination of the husband's employment "for any reason other than retirement because of age or permanent and total disability," or after ten years, whichever occurs first. Each agreement also describes circumstances in which the death of the employee might result in the termination of the option. William Brunelli, a personnel manager of HP, testified that these stock options are commonly granted each year to the company's high level and top performing employees.

On July 17, 1991, HP granted the husband 2,500 shares of restricted stock. The restricted stock agreement provides that the stock shares will vest and the restriction period will expire five years from the date of the agreement and that during the restriction period the husband cannot transfer or pledge his interest in the stock shares, but retains all other rights associated with ownership of the stock shares, including the rights to vote the stock and to receive cash dividends. The agreement also contains provisions affecting the husband's right to retain all or portions of the restricted stock shares in the event of the termination of the husband's employment prior to the expiration of the restriction period, the husband's retirement, the husband's total and permanent disability, or the husband's death. Brunelli tes-

tified that HP rarely grants restricted stock shares to its employees and that such grants are usually awarded as bonuses for completion of some project and as incentives to employees to remain with the company.

The decree of dissolution in this case was entered on November 16, 1992. After conducting a hearing, the trial court entered its permanent orders on May 14, 1993. The trial court found that the stock options had been granted to the husband for services and as an incentive to remain an employee and that the restricted stock shares had been granted to him as a bonus for his activities in closing down a division of HP and as an incentive to encourage the husband to remain an HP employee. Upon these findings and in reliance on *In re Marriage of Frederick,* 218 Ill.App.3d 533, 161 Ill.Dec. 254, 578 N.E.2d 612 (1991), the trial court held that portions of the stock options and portions of the restricted stock shares constituted marital property. After determining that the marital property should be divided equally, the trial court concluded that the wife was entitled to receive a portion of the net value of the stock options and restricted stock shares "based upon the ratio of the period that the parties were married during these respective options and grant in proportion to the entire length of the options or grant." The trial court then awarded fifty percent of fifty percent of the value of the 1990 option, fifty percent of twenty-five percent of the value of 1991 option, and fifty percent of twenty-six percent of the value of the restricted stock shares.[1] Because of the difficulty in determining the present values of the stock options and the restricted stock shares, the trial court retained jurisdiction to distribute the property when the options were exercised and when the restriction period relating to the stock shares expired. The court of appeals affirmed the trial court's rulings.

## II

The wife argues that all of the options and all of the restricted stock shares constitute marital property. Alternatively, she asserts that the marital fraction adopted by the trial court is erroneous. We conclude that the trial court properly determined that only portions of the stock options constitute marital property. However, we further conclude that the formula adopted by the trial court in determining the marital fraction of those options is inappropriate under the circumstances of this case. We agree with the wife's argument that all of the restricted stock shares constitute marital property.

### A

In a dissolution proceeding, a trial court is required to "divide the marital property" between spouses. § 14–10–113(1), 6B C.R.S. (1987). Marital property is defined as "all property acquired by either spouse subsequent to the marriage" and prior to a decree of legal separation. § 14–10–113(2)(c), 6B C.R.S. (1987).[2] The General Assembly has not defined the meaning of the term "property" for purposes of the Uniform Dissolution of Marriage Act, §§ 14–10–101 to –133, 6B C.R.S. (1987 & 1995 Supp.) (the Act). Furthermore, the General Assembly did not indicate at what point property is acquired for purposes of the Act.

While this court has not previously considered whether or to what extent stock options and restricted stock shares constitute marital property for purposes of the Act, we have addressed similar issues with respect to retirement plans. In *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987), we held that future benefits available to an employee-spouse pursuant to a vested employer-supported pension plan constituted marital property for purposes of the Act even though receipt of the benefits was contingent on the employee-spouse's continued employment and survival until the commencement of retirement. We determined that the benefits were a form of deferred compensation and overruled prior decisions holding that rights to such benefits must have a present cash surrender or loan value to constitute marital property. *Id.* at

---

**1.** The trial court assumed that the 1988 stock option had been exercised and distributed.

**2.** Section 14–10–113(2) contains other exceptions to the general definition of marital property which are not applicable in this case.

664. We concluded that the right of the employee-spouse in *Grubb* vested, and thus became enforceable, when the minimum terms of employment necessary for the employee to be entitled to receive the pension benefits had been fulfilled. *Id.* at 665. We held that the employee-spouse's right to receive pension benefits constituted marital property for purposes of the Act even though receipt of the benefits was contingent on continued employment and survival until retirement. *Id.* We noted that such contingency should be considered by the trial court in determining the present value of the property, *id.,* and suggested that trial courts could retain jurisdiction of the case and order distribution of those assets at a later time to avoid valuation problems. *Id.* at 666.

In *In re Marriage of Gallo,* 752 P.2d 47 (Colo.1988), we held that vested but unmatured military retirement benefits that had accrued during a marriage constituted marital property for purposes of the Act. In *In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995), we held that post-dissolution increases in benefits established under a noncontributory defined benefit military pension plan, even though nonvested and unmatured, constituted marital property for purposes of the Act and approved the use of a time-rule formula for evaluation of such property. We recently reaffirmed the basic principles announced in *Grubb, Gallo,* and *Hunt* in *In re Marriage of Kelm,* 912 P.2d 545 (Colo.1996). Those principles instruct our analysis of the questions raised concerning the status of the husband's stock options and restricted stock shares for purposes of the Act's provisions concerning marital property.

### B

■ An employee stock option is a contractual right to purchase stock during a specified period at a predetermined price. 2A Research Institute of America, Benefits Coordinator ¶ 31,101 (1995) (2A Benefits Coordinator). While there is no requirement that the option period be limited to a certain duration for nonstatutory stock options, the option period is typically ten years. *Id.* ¶ 31,154. In addition, while nonstatutory employee stock options may be immediately exercisable upon being granted, for tax planning purposes of both the employer and the employee such options more typically are exercisable only after a waiting period or in incremental portions. *Id.* ¶ 31,157.

An optionee's right to exercise an employer-granted stock option is typically related in some manner to the optionee's employment status. Neal A. Mancoff & David M. Weiner, Nonqualified Deferred Compensation Arrangements § 4:47 (1991). By relating an optionee's rights to exercise stock options to the optionee's employment status, an employer is able to use stock options as an incentive to employees to continue employment with the employer. An employer may provide for more liberal exercise conditions if the termination of employment occurs by reason of retirement, death, or disability, and may provide for more restrictive exercise conditions if the termination of employment is for "cause" or for other circumstances deemed not to be in the interest of the company. *Id.* The husband's stock options in this case are typical of nonstatutory stock options in that the option period is ten years; the options become exercisable in incremental portions; and, with certain exceptions, the optionee's abilities to exercise the options lapse upon the termination of employment.

■ Because the options are not immediately exercisable and the husband may be required to forfeit the options before the options become exercisable, the parties describe the options as nonvested. Characterizing the options as nonvested, though perhaps accurate for purposes of employee benefits and tax law, may be misleading for purposes of ascertaining what interests are marital property for purposes of the Act.[3] For instance, under the Internal Revenue Code, the optionee of a nonstatutory employee stock option must recognize income at the time the option is granted if the

---

**3.** Other courts have recognized the varied use of the term "vested." *See In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 563, 566 (1976) (nonvested pension rights were "vested" for purposes of property division because the employer could not unilaterally repudiate the right without terminating the employment relationship).

option has a "readily ascertainable value" at the time of the grant. Treas.Reg. § 1.83–7 (1978); *see* 2A Benefits Coordinator ¶ 31,-146. If the option does not have a readily ascertainable value at the time of the grant, the optionee recognizes income at the time the option becomes "substantially vested" or no longer subject to a "substantial risk of forfeiture," which generally does not occur until the option is exercised. *See* I.R.C. § 83(a) (1994); Treas.Reg. § 1.83–1, –7 (1978); *see also* 2A Benefits Coordinator ¶ 31,146. For purposes of determining the marital nature of an employee's right to receive certain benefits in the future, however, vesting occurs when the employee has completed the minimum terms of employment necessary for the employee to be entitled to receive the benefits, whether or not the benefit has a readily ascertainable value or is subject to a substantial risk of forfeiture. *Grubb*, 745 P.2d at 665.

■ A nonvested interest is an expectancy and not property because the holder has no enforceable rights. *See In re Marriage of Jones*, 812 P.2d 1152, 1155–56 (Colo.1991); *Grubb*, 745 P.2d at 665. Thus, a stock option might be deemed nonvested for purposes of determining its status as marital property if the grant of the option were conditional. In this case, HP's grants of stock options to the husband were not conditional grants. Although the husband's ability to exercise the options is contingent on the passage of time and his continued employment, his rights under the options cannot be unilaterally repudiated by HP.[4] Pursuant to the terms of the HP stock option plan, HP can modify, extend or renew outstanding options and authorize the grant of substitute options, but HP cannot alter or impair rights or obligations created by an option previously granted without the consent of the optionee.

The trial court found in this case that the options were granted in consideration of services and as an incentive for continued employment with the company. Unlike pension benefits, employee stock options may well be considered compensation for future services as well as for past and for present services. *In re Marriage of Hug*, 154 Cal.App.3d 780, 201 Cal.Rptr. 676, 679, 681 (1984). It is undisputed that the purpose of each of the options is to provide compensation.[5] Because an employee does not earn and thus does not have a right to compensation until the services for which the employee is being compensated have been performed, *Grubb*, 745 P.2d at 665, the question of the extent of the husband's enforceable rights under the option agreement in this case depends on the extent to which the options were granted in consideration of past or future services.[6] To the extent an option is granted in consideration of past services, the employee has earned the compensation represented by a portion of the option and may enforce the option agreement to that extent. However, to the extent an option is granted in consideration of future services, the employee has not earned the compensation for such services and does not have enforceable rights under the option agreement until such time as the future services have been performed.[7]

---

4. A company may retain the right to revoke the option under certain circumstances before the option has been exercised. 2A Benefits Coordinator ¶ 31,159.

5. The plan under which these options were granted is called the Hewlett–Packard Company Incentive Compensation Plan. Under the plan, an employee may immediately sell the stock purchased pursuant to the option. By doing so, an employee is able to finance the purchase and the employee realizes as income the difference between the sale price and the option price.

6. Options granted in consideration of present services may also be deemed a form of deferred compensation. *See In re Marriage of Short*, 125 Wash.2d 865, 890 P.2d 12, 16 (1995) (an option granted during the marriage to induce one to forego establishing a company and to accept employment with the company offering the option is granted in consideration of present services and is marital property).

7. There is a distinction between conditioning the receipt of benefits on the employee remaining in the employ of the employer and providing benefits in consideration of the performance of future

■ In view of these considerations, we conclude that to the extent an employee stock option is granted in consideration of past services, the option may constitute marital property when granted.[8] *See Grubb,* 745 P.2d at 665; *see also In re Marriage of Short,* 125 Wash.2d 865, 890 P.2d 12, 16 (1995). On the other hand, an employee stock option granted in consideration of future services does not constitute marital property until the employee has performed those future services. *See Short,* 890 P.2d at 16.

The trial court and the court of appeals in essence recognized this distinction in holding that the wife was entitled only to portions of the husband's stock options. However, the trial court's time-rule formula and resulting formulation of the applicable marital fraction assume that the options were granted solely for future services, in that the formula treats the options as marital property only to the extent that future services were rendered prior to the entry of the decree of dissolution. The formula adopted by the trial court thus fails to acknowledge the fact that some portions of the options may have constituted marital property at the time the options were granted to the husband.

■ Although the trial court found that the stock options were granted in consideration of services, it did not determine the extent to which each option represented consideration for past or future services. Under this circumstance, the case must be remanded to the trial court with directions to deter-mine, with respect to each option, what portion was granted in consideration of past services and what portion was granted in consideration of future services.[9] Upon making that determination, the trial court should then determine an appropriate means of evaluating those portions of the stock options that reflect compensation for future services. The portions of the stock options granted in consideration of past services may, as we have indicated, constitute marital property in their entirety.

### C

■ The wife argues that the restricted stock shares constitute marital property in their entirety. We agree.

Although language contained in the restricted stock agreement in this case suggests that the agreement is based on consideration of both past and future services by the husband, the agreement's grant of authority to the husband to exercise ownership rights in those stock shares is inconsistent with that suggestion. In addition, although the restricted stock agreement indicates that the restricted stock shares are subject to forfeiture during the five years after the date of the agreement, HP cannot unilaterally repudiate the husband's right to retain the stock. The husband received the shares; he was not granted a conditional right to receive the shares. Because the husband had already earned the right to receive those shares, they represent a form of deferred compensation and thus constitute marital

---

services. *See Grubb,* 745 P.2d at 665; *see generally* 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts § 5.34 (rev. ed. 1995).

**8.** The record before us does not indicate whether any portion of any of the stock options in question was granted in consideration of services rendered by the husband prior to the marriage. We therefore do not consider issues which may arise from such circumstances.

**9.** Whether an employee stock option is characterized as granted in consideration of past or future services depends on the circumstances surrounding the grant and the effect of the option agreement. For example, in *In re Marriage of Hug,* 201 Cal.Rptr. at 680, the court indicated that the determination of whether an option is granted in consideration of past or future services may turn on such factors as the flexibility and variety of option plans as well as the size of the company and its need to offer incentives to employees to remain as employees of the company. Certainly this is not an exhaustive list, and other factors may be considered. Furthermore, the incentive feature may well be present whether the option is granted in consideration of future services or whether receipt of the benefits is merely conditioned on the employee remaining an employee.

**1320**

property for purposes of the Act. *Grubb*, 745 P.2d at 664. That the husband's full enjoyment of the benefit is conditioned on his remaining an employee affects the present value of the restricted stock shares, not their marital nature. *Id.* at 665. Therefore, we conclude that the restricted stock shares constitute marital property for purposes of the Act and should be divided accordingly.

### III

For the foregoing reasons, we affirm the determination of the trial court and the court of appeals that portions of the husband's stock options constitute marital property. However, we conclude that the trial court failed to adopt a formula for evaluation of the stock options that adequately recognizes the fact that those portions of such options representing deferred compensation for past services may constitute marital property. We also conclude that the restricted stock shares constitute marital property in their entirety, contrary to the determinations of the court of appeals and the trial court. We therefore affirm in part and reverse in part the judgment of the court of appeals and remand the case to that court with directions to vacate the trial court's permanent orders and return the case to the trial court for further proceedings consistent with this opinion.