24CA1633 Marriage of Broderick 04-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1633
El Paso County District Court No. 23DR30179
Honorable Marcus Henson, Judge

In re the Marriage of

Edward Stephan Broderick, Jr.,

Appellee and Cross-Appellant,

and

Samantha Allyn Weeks,

Appellant and Cross-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

The Drexler Law Group, LLC, Matthew B. Drexler, Teresa A. Drexler, M. Addison Freebairn, Colorado Springs, Colorado, for Appellee and Cross-Appellant

Law Office of Joel M Pratt, Joel M. Pratt, Colorado Springs, Colorado, for Appellant and Cross-Appellee

¶ 1	In this dissolution of marriage case between Samantha Allyn Weeks (wife) and Edward Stephen Broderick, Jr. (husband), both parties appeal those portions of the permanent orders concerning the property division and child support.  We reverse the marital property division and therefore also reverse the district court's orders concerning maintenance and child support.  We remand the case for further proceedings.

## I.	Background

¶ 2	In 2023, husband petitioned to dissolve the parties' eight-year marriage.  The proceedings were bifurcated: the district court entered a decree of dissolution effective October 23, 2023, and held the permanent orders hearing on March 21, 2024.  In the resulting permanent orders, the court equally divided the marital estate, which was valued in excess of $3 million.  The court declined to award either party maintenance but it ordered husband to pay wife $694 per month in child support.

## II.	Bifurcation

¶ 3	As an initial matter, we consider and reject husband's contention that the district court abused its discretion by bifurcating the proceedings.

¶ 4     Under section 14-10-106(1)(b), C.R.S. 2025, a district court may defer the entry of the permanent orders until after the entry of the decree of dissolution, if it finds that such a deferral is in the parties' best interests. This option should be considered only in exceptional circumstances. *Estate of Burford v. Burford*, 935 P.2d 943, 951 (Colo. 1997). Even so, we will not disturb a court's decision to bifurcate absent a showing of an abuse of discretion. *See id.* ("Therefore, the district court properly exercised its discretion, under these exceptional circumstances, in bifurcating the proceedings."). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.

¶ 5     Here, the district court continued the original, half-day permanent orders hearing scheduled for October 4, 2023, to March 21, 2024, because husband asked that the hearing be set for a full day. However, when the court granted husband's motion, the parties had already assembled exhibits and prepared for the original hearing date.

¶ 6 Accordingly, wife asked the court to immediately enter the decree so that the parties would not have to redo the entirety of their trial preparation for the new hearing, including updating sworn financial statements and exhibits to reflect changes in the value of the parties' property. Wife cited the escalating costs of the proceeding, arguing that because of the parties' litigiousness, she had already incurred an extraordinary amount of attorney fees, even though a permanent orders hearing had yet to occur. Therefore, wife asserted that bifurcation would contain costs by preventing disputes as to constant changes in the value of the marital estate. Wife also cited the complex financial issues involved and her desire to be divorced.

¶ 7 The district court agreed with wife and dissolved the parties' marriage as of October 23, 2023. In doing so, the court cited the "extraordinary expense[s]" that would be incurred by both parties if the court did not bifurcate because the parties had already incurred significant costs to prepare for the original hearing.

¶ 8 Given that (1) the original continuance was at the behest of husband; (2) the gap between the decree and permanent orders hearing was less than five months; (3) both parties were litigious;

and (4) the parties had already spent substantial money and effort preparing for an October 2023 division of the marital estate, we cannot say that the court's decision to bifurcate the proceedings was manifestly arbitrary, unreasonable, or unfair. *See Burford*, 935 P.2d at 951; *see also In re Marriage of Lester*, 647 P.2d 688 (Colo. App. 1982) (no error in bifurcating decree and continuing hearing on property division).

¶ 9 Husband also argues that the court should have held an evidentiary hearing as to whether bifurcation was warranted under *Burford*, 935 P.2d at 951. But the court's decision to bifurcate was made at a status conference at which the parties, who had received notice that bifurcation would be addressed, presented extensive argument on the issue. At no point during that status conference did husband request an evidentiary hearing on bifurcation.

¶ 10 Therefore, to the extent that husband may have been entitled to a hearing on bifurcation, we agree with wife that he failed to preserve the issue for appeal. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

### III.  Marital Property Division

¶ 11  We next address the parties' contentions concerning the marital property division.

### A.  Restricted Stock Units

¶ 12  Both parties assert that the district court erred when valuing and dividing certain restricted stock units (RSUs) associated with wife's employment.  Specifically, wife argues that the court erred in finding that the unvested portion of the RSUs were marital property subject to division, and both parties challenge the court's $710,000 valuation of the RSUs.  Husband also asserts that the court failed to value and divide the vested RSUs.

### 1.  Additional Facts

¶ 13  Starting in April 2021, wife was employed by Shift4 Payments, Inc., and in mid-2022, she was promoted to the role of chief transformation officer.  As part of her compensation package, wife was awarded four separate grants of RSUs.

¶ 14  Wife received such grants in August 2021, December 2021, and March 2023, with the RSUs incrementally vesting between August 2022 and March 2026.  The grants of RSUs were governed

5

by both the Restricted Stock Unit Award Agreement accompanying each grant and Shift4's Incentive Award Plan.

¶ 15    However, between the entry of the decree and the permanent orders hearing, wife's position at Shift4 was eliminated.  In the process, wife signed an employment separation agreement with Shift4 ending her employment as of February 23, 2024.  That agreement provided wife severance benefits to "assist [her] while [she] pursue[d] other opportunities."  Specifically, the agreement entitled wife to a lump sum severance payment of $710,000 and lifted certain non-competition restrictions that she had previously agreed to.  The agreement also required wife to forfeit any RSUs that had been granted to her but had not yet vested.

¶ 16    At the permanent orders hearing, husband suggested that wife's severance payment was effectively an in-kind exchange for her unvested RSUs.  Husband valued the unvested RSUs at $967,000 based on the stock price of Shift4 as of March 11, 2024, the date wife executed the separation agreement.

¶ 17    Conversely, wife argued that only the vested RSUs were marital property, and given the elimination of her position at Shift4,

6

she had lost any right to the unvested RSUs. Wife denied that the severance payment was in exchange for the unvested RSUs.

¶ 18    The district court first found that all the RSUs were marital property, reasoning that even though some of the RSUs had not vested, wife had an enforceable right to receive them. Then, the court valued the RSUs at $710,000 because (1) the unvested RSUs could not be divided in kind as they no longer existed given wife's separation from her employment at Shift4, and (2) wife had received a $710,000 payment as part of her severance package. Therefore, the court linked wife's severance package to the value of the RSUs, explaining that "the Court does find it appropriate [to] allocate $710,000 in value related to the Shift4 RSUs" on the marital spreadsheet.

## 2.    Governing Legal Standards

¶ 19    A property division requires two steps: first, the court determines whether an interest constitutes "property" and then, if so, whether it is marital or separate property. *In re Marriage of Balanson,* 25 P.3d 28, 35 (Colo. 2001). It then sets apart the separate property and divides the marital property. § 14-10-113(1), C.R.S. 2025. With certain exceptions not applicable here, marital

7

property means all property acquired by either spouse during the marriage. § 14-10-113(2); *Balanson*, 25 P.3d at 35-36.

¶ 20    An RSU is "a form of equity-based compensation consisting of contractual promises by an employer to deliver shares of stock at a future date once the [units] have vested." *In re E.J.S.*, 483 P.3d 110, 111 (Wash. Ct. App. 2021). It is similar to a stock option, which is a "contractual right to purchase stock during a specified period at a predetermined price" once the option has vested. *In re Marriage of Miller*, 915 P.2d 1314, 1317 (Colo. 1996). The only substantive difference between an RSU and a stock option is that an RSU results in an employee being granted ownership of company stock, as opposed to merely receiving the option to purchase stock. *See E.J.S.*, 483 P.3d at 111; *Miller*, 915 P.2d at 1317.

¶ 21    We thus find instructive the cases discussing whether stock options received during the marriage are marital property. Under *Balanson*, 25 P.3d at 39, stock options constitute property for purposes of dissolution proceedings only when the spouse has an enforceable right to the options. If the options were granted as an incentive for accepting employment or as consideration for past services, the spouse has an enforceable right to them even if that

8

right is not yet exercisable because the options are unvested. *Id.* Conversely, if the options are awarded in consideration for future services, the spouse "does not have enforceable rights under the option agreement until such time as the future services have been performed." *Id.* at 40 (quoting *Miller*, 915 P.2d at 1318). "In determining whether one has an enforceable right to employee stock options, a court must look to the terms of the contract granting such options." *Id.* at 39.

¶ 22 We review de novo the district court's interpretation of the documents governing the interest in question and the court's resulting determination of whether the interest is property. *See In re Marriage of Powell*, 220 P.3d 952, 954 (Colo. App. 2009) (reviewing stock option plan de novo in determining whether the options were marital property); *cf. Miller*, 915 P.2d at 1319-20 (concluding, based on the restricted stock agreement, that restricted stock received during the marriage was marital property).

¶ 23 The valuation of marital property — and thus, necessarily, the determination of whether something is property at all — is established on the date of the decree where, as here, the date of the decree preceded the date of the hearing on disposition of property.

*See* § 14-10-113(5); *In re Marriage of Turner*, 2022 COA 39, ¶ 15. We will not disturb the court's determination of the value of marital property unless the valuation is unsupported by the record. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008); *see also In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (noting that the district court's property valuation will not be disturbed if it is reasonable in light of the evidence as a whole).

### 3. The District Court Properly Concluded that the Unvested RSUs were Marital Property

¶ 24 Both parties agree that any RSUs that were vested as of date of the decree of dissolution were marital property. *See Turner*, ¶ 15. Therefore, our inquiry is limited to the district court's characterization of the unvested RSUs as marital property. And we conclude that as of the October 23, 2023, decree, the unvested RSUs were entirely marital property.

¶ 25 We reach this conclusion based on a de novo review of the documents governing wife's RSUs. To start, we observe that the RSU Award Agreement did not clearly state whether the RSUs were awarded to wife in consideration for past or future services. Instead, the agreement provided that the RSUs were granted "[i]n

10

consideration of [wife's] past and/or continued employment with or service to [Shift4] and for other good and valuable consideration." Yet, despite this lack of clarity, we nevertheless conclude that wife had an enforceable right to the RSUs based on other language in both the RSU Award Agreement and Shift4's Incentive Award Plan.

¶ 26 The Award Agreement provided that each RSU represented the right to receive one share of Shift4 stock, but "unless and until the RSUs have vested, [the employee] will have no right to the payment of any Shares." In turn, the agreement provided that "[s]ubject to [wife's] continued employment with . . . [Shift4,] on each applicable vesting date . . ., the RSUs shall vest . . . as . . . set forth in [each RSU] Grant Notice." The agreement also stated that wife would surrender all unvested RSUs in the event her employment was terminated.

¶ 27 The Award Agreement also listed certain events that would trigger either the immediate or ongoing, automatic vesting of any unvested RSUs, such as wife's death, disability, or the occurrence of certain triggering events following a change in control of Shift4. In addition, while under certain circumstances, the plan administrator could terminate the Shift4 Incentive Award Plan, and

could amend the plan, any award granted under the plan, and any corresponding award agreement, such changes could not "materially and adversely" affect an award holder unless the award holder had consented.

¶ 28 Given such terms in the Award Agreement and Incentive Award Plan, we are convinced that wife had enforceable rights to the RSUs. Critically, after the grants of the RSUs to wife, absent the termination of her employment, there was no provision in the RSU Award Agreement or Incentive Award Plan which would have terminated her interest in the RSUs. *See Powell*, 220 P.3d at 956-57 (even where terms of the relevant documents were unclear as to whether stock options were granted for past or future services, stock options that had already been granted to wife were marital property because, so long as wife remained employed, there was nothing which could have terminated her interest in the options).

¶ 29 And we disagree with wife that the RSUs were mere expectancies because they were unvested. The fact that wife would not realize the value of the RSUs unless and until she remained employed for a specified period after each grant does not make the RSUs a mere expectancy. *See Miller*, 915 P.2d at 1319-20; *see also*

12

*Balanson*, 25 P.3d at 39 (vesting is not determinative of whether a stock option, or similar interest, is a divisible property interest). Instead, the determinative issue is whether she has an enforceable right to the interest *regardless of whether that right is presently exercisable.* *Balanson*, 25 P.3d at 39; *see also Miller*, 915 P.2d at 1317-20; *Powell*, 220 P.3d at 957.

¶ 30 Lastly, because wife remains entitled to her RSUs even if the Incentive Award Plan is terminated by Shift4, and because the plan and Award Agreement cannot be modified to adversely affect the RSUs already granted to her without her consent, her RSUs are not akin to a revocable trust or an interest under a will of a living person, which are not "property" under section 14-10-113(7)(b). *See Balanson*, 25 P.3d at 41 (spouse's interest in a revocable or discretionary trust is not a property interest, but an interest in an irrevocable trust is a property interest).

¶ 31 In sum, the district court did not err by concluding that the unvested RSUs were a marital asset subject to the court's division.

### 4. The District Court's Valuation of the RSUs

¶ 32 We next address the district court's valuation of the RSUs. We agree with wife that the court erred by valuing the RSUs based on

her $710,000 in severance pay, but we disagree with husband that the court was required to value the unvested RSUs on the date that wife signed her separation agreement with Shift4.

¶ 33 We conclude that the district court abused its discretion for multiple reasons. To start, the court was required to value the RSUs as of the date of the decree because the decree preceded the permanent orders hearing. *See* § 14-10-113(5); *Turner*, ¶ 15. Instead, the court valued the RSUs based on wife's severance payment, which she received multiple months after the entry of the decree. In doing so, the court did not explain how the value of wife's severance payment was indicative of the value of the RSUs as of the date of the decree given such a lapse in time. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 (requiring the district court to make sufficiently explicit findings of fact to provide a clear understanding of the basis of its order); C.R.C.P. 52.

¶ 34 Moreover, the district court erred because, by using the severance payment to value the RSUs, it de facto divided wife's severance payment as marital property in place of the RSUs, without first making any findings as to whether the severance

14

payment was in fact property as of the date of the decree. *See Balanson*, 25 P.3d at 35; *Turner*, ¶ 15.

¶ 35    While section 14-10-113(2)(c) defines marital property as "all property acquired by either spouse subsequent to the marriage," the district court may only divide assets or debt "existing at the time of dissolution," *In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998). Therefore, assets acquired post-decree "are not considered marital property and . . . are not distributable." *In re Marriage of Heupel*, 936 P.2d 561, 572 (Colo. 1997). Consequently, absent a finding that wife had a contractually enforceable right to her severance payment as of the date of the decree, *see Balanson*, 25 P.3d at 35, 39-40, the district court was prohibited from dividing wife's severance payment as marital property. *Cf. In re Marriage of Holmes*, 841 P.2d 388, 389 (Colo. App. 1992) (holding that "severance pay [received] to replace expected loss of income and not deferred compensation for services rendered during the marriage" is not marital property subject to division).

¶ 36    Lastly, notwithstanding the district court's insufficient findings, we agree with wife that the court's valuation of the RSUs was unsupported by the record. Husband speculated that wife

15

received the severance payment as an in-kind payment for surrendering her unvested RSUs. But the court sustained wife's objection to some of husband's testimony, and husband's theory and even higher $967,000 proposed valuation of the unvested RSUs were based on Shift4's stock price as of March 11, 2024, when wife signed the separation agreement. Thus, husband's testimony could not support a valuation of the RSUs as of the date of the decree, which was almost five months earlier. *See* § 14-10-113(5); *Turner*, ¶ 15.

¶ 37    In support of his $967,000 valuation, husband asks us to apply *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996), which holds that "if marital assets are dissipated by one of the parties, they must be valued as of the time when they existed."

¶ 38    But *Finer* is inapplicable here. There was no finding of dissipation, as the district court explicitly rejected husband's suggestion that wife had lost her job for "nefarious" reasons. And nothing in *Finer* suggests that, even in cases of dissipation, the court may value marital property based on a date occurring *after*, as applicable here, the entry of the decree. *See id.* (recognizing that compliance with section 14-10-113(5) is "mandatory"). Thus, under

no circumstances could the district court have valued the RSUs as of March 11, 2024.

¶ 39    In sum, because the district court abused its discretion when valuing the RSUs, we reverse the marital property division and remand for the court's reconsideration.

### 5.    Vested RSUs

¶ 40    We agree with husband, however, that to the extent the district court failed to value and divide the vested RSUs, which both parties agreed were marital property, it erred.  In the permanent orders, the court simply divided the entirety of the RSUs at a $710,000 valuation, without explaining what portion, if any, of that value corresponded to the vested RSUs.  Thus, when reconsidering the marital property division, the court should both value and divide the vested RSUs along with the unvested RSUs and sufficiently explain the basis of its ruling.  *See* § 14-10-113(1) (requiring the court to divide the marital property as it deems just); *Gibbs*, ¶ 9.

### 6.    Remand Instructions

¶ 41    Because we are reversing the marital property division, the court must consider the parties' economic circumstances at the

time of the remand.  *In re Marriage of Morton*, 2016 COA 1, ¶ 14;

*see* § 14-10-113(1)(c) (When equitably dividing the marital estate, a

court must consider "[t]he economic circumstances of each spouse

at the time the division of property is to become effective.").

¶ 42    Except as otherwise expressed herein, the court may not

recharacterize or revalue the marital property or debts properly

accounted for in the existing property division.  *See* § 14-10-113(5);

*see also Medeiros*, ¶ 25 (noting that in most circumstances there is

no basis for the court on remand to recharacterize or revalue the

marital property or debts accounted for in the existing property

division).  However, it may reallocate the marital estate in light of

the new evidence, if any, on the parties' current economic

circumstances, as well as the relevant evidence from the previous

permanent orders hearing.  *In re Marriage of Wells*, 850 P.2d 694,

697 n.6 (Colo. 1993); *In re Marriage of Evans*, 2021 COA 141, ¶ 52;

*In re Marriage of Joel*, 2012 COA 128, ¶ 28.  It is within the court's

discretion to receive additional evidence, including evidence as to

the value of the vested and unvested RSUs as of the date of the

decree.  *See In re Marriage of Lee*, 781 P.2d 102, 104 (Colo. App.

1989); § 14-10-113(5).

## B. Wife's Military Retirement

¶ 43    Wife next contends that the district court abused its discretion by valuing the marital portion of her military retirement, which her attorney characterized as a "military pension," at $391,762. We disagree, although the district court may nevertheless reconsider the way it divides the military retirement on remand.

¶ 44    The district court may distribute a spouse's pension in one of three ways: (1) net present value; (2) deferred distribution; and (3) reserve jurisdiction. *In re Marriage of Kelm*, 912 P.2d 545, 547 (Colo. 1996) (describing the three methods); *In re Marriage of Hunt*, 909 P.2d 525, 530-31 (Colo. 1995) (same). The decision of which method to use lies within the district court's sound discretion. *See Kelm*, 912 P.2d at 551.

¶ 45    It was undisputed that wife's military retirement was vested and had matured. Wife asked the court to use the time rule formula to divide the retirement, which would have involved using either the deferred distribution or reserve jurisdiction method. *See Hunt*, 909 P.2d at 531-35. Instead, the district used the net present value method, as proposed by husband, and divided wife's

military retirement as part of the marital estate at a value of $391,762.

¶ 46　Wife argues that the district court made inadequate findings in support of its valuation and that the valuation was otherwise unsupported by the record. But we are unpersuaded because it is apparent to us that the court's valuation was based on husband's proposed marital spreadsheet, which in turn listed an expert report admitted as Exhibit 26 valuing the marital portion of the military retirement at $391,762.

¶ 47　While wife contends that Exhibit 26 was not admitted into evidence, the record does not support her assertion. Specifically, during the permanent orders hearing, the parties discussed admitting by stipulation their respective proposed marital spreadsheets (as demonstratives), plus the supporting exhibits listed in each spreadsheet. In discussing a stipulation, husband's attorney proposed that "we could at least start with the exhibits that [our] spreadsheets are based on coming into evidence," to which wife's attorney replied, "I think that's fine." While neither party moved to admit any exhibits at that time, at the start of husband's testimony, "because there's a stipulation," husband

asked for exhibits one through thirty-two be considered admitted. Wife's attorney remained silent, and the district court admitted the exhibits into evidence by responding, "[t]hey will be."

¶ 48    Wife disputes whether Exhibit 26 was in evidence because, sometime later, while the parties were discussing a different exhibit, her attorney interjected and stated that "I want to make sure we're clear on the stipulation. . . . I agreed to any financial documents that are statements, but I don't agree, like, to Robert Johnson's report [Exhibit 26] coming into evidence without cross-examination." The court then responded, "I don't think that's where [husband's] counsel was headed," and the exchange ended with wife's attorney replying: "Okay. . . . I wanted to make sure."

¶ 49    However, because Exhibit 26 had already been admitted into evidence, and because wife did not move the court for any affirmative relief from its earlier ruling admitting Exhibit 26, we conclude that wife failed to preserve for our review any challenge to the admission of that exhibit. *See Melat,* ¶ 18; *cf. Herrera v. Anderson,* 736 P.2d 416, 418 (Colo. App. 1987) ("[I]t goes without saying that one who affirmatively seeks relief . . . must pursue his request to its disposition before he can complain."); *Brown v. Am.*

21

*Standard Ins. Co. of Wisconsin*, 2019 COA 11, ¶ 21 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal.").

¶ 50 Therefore, on remand, the district court may not revalue wife's military retirement. *See Medeiros*, ¶ 25. However, because the court must reconsider the property division based on the parties' current economic circumstances, *Morton*, ¶ 14, the court may use a different method to divide wife's military retirement if, in its discretion, it concludes that a different method is appropriate in light of the new property division. *Kelm*, 912 P.2d at 551. We therefore decline to address wife's additional argument that, even assuming the record supports husband's valuation, the court abused its discretion by dividing her military retirement using the net present value method.

## C.    Husband's Bonus

¶ 51 We next address wife's claim that the district court erroneously excluded a bonus that husband received from his employer from the marital estate. We conclude that the district court must reconsider its treatment of husband's bonus on remand.

¶ 52     At the permanent orders hearing, husband acknowledged that he had received an approximately $111,000 bonus from his employer, Southwest Airlines, in February 2024. The district court left the bonus off of the marital spreadsheet, and when wife inquired as to whether the court would be dividing the bonus, the court found that "[t]o the extent that something like that was actually something paid out to these pilots, as I understood it, I didn't have sufficient evidence to conclude that there was any substantial lump sum that I could divide." The court acknowledged "some evidence" of a bonus paid to husband but then explained that it "did not find that there was something I could divide as marital property under the circumstances."

¶ 53     We agree with wife that the district court erred because we are unable to understand the basis of its ruling addressing the bonus. *See Gibbs*, ¶ 9. It was undisputed that husband received an approximately $111,000 bonus. Wife called a Southwest pilot as a witness, who explained in detail that the bonus represented a retroactive pay increase based on husband's salary during the parties' marriage, whereas husband testified that the bonus was an incentive for ratifying the union's new contract.

23

¶ 54    It was the district court's role as factfinder to resolve this conflicting evidence concerning husband's bonus. *See In re Marriage of McNamara*, 962 P.2d 330, 333-34 (Colo. App. 1998). Yet, the court did not do so and instead suggested that it had not heard sufficient evidence as to whether the bonus existed.

¶ 55    Accordingly on remand, the district court must reconsider its ruling concerning husband's bonus and make sufficient findings in support of its decision. *See Gibbs*, ¶ 9. As a threshold matter, the court must determine whether, as of the date of the decree, husband's bonus in fact constituted property. *See Turner*, ¶ 24 (recognizing that under *Balanson*, "contractual enforceability at the time of the permanent orders hearing (or, if earlier, the date of the decree) is essential to the determination of whether [a bonus] is property"). Then, only if husband's bonus constituted property as of the date of the decree, may the district court determine whether the bonus was marital property and allocate it accordingly. *See Turner*, ¶¶ 15-25 (holding that the district court properly excluded wife's bonuses from the marital property division where "no evidence demonstrated that she had an enforceable right to them at

the time of the permanent orders hearing," which predated the decree); *Balanson*, 25 P.3d at 35.

¶ 56    Wife suggests that we must apply *In re Marriage of Huston*, 967 P.2d 181, 186 (Colo. App. 1998), *disagreed with by Balanson*, 25 P.3d at 39, for the proposition that a bonus "which is deferred until after the dissolution, but fully earned during the marriage, is marital property." But we agree with *Turner*, ¶ 20, that *Huston* is only applicable if the spouse first had an enforceable right to their bonus at the time of the decree. Thus, the district court's primary inquiry on remand remains whether husband had an enforceable right to his bonus as of the October 23, 2023, decree.

### D.    Wife's Consulting Business

¶ 57    We next reject husband's assertion that the district court erred by assigning no value to a consulting business that wife operated as a source of secondary income.

¶ 58    The expert report in husband's Exhibit 26 also valued wife's side business, Samantha Weeks Consulting, LLC, at $164,100. However, noting a "dearth of testimony" about wife's business, the district court found that "[Samantha] Weeks' Consulting is pretty

much just the value of [wife]," and therefore, "I can't assign any particular marital value [to the business]."

¶ 59 Husband argues that the district court erred by ignoring the expert's valuation. But the court "can believe all, part, or none of [the evidence], even if uncontroverted, and its resolution of conflicting evidence is binding on review." *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007); *see also Krejci*, ¶ 23 ("The court may select the valuation of one party over that of the other party, or make its own valuation, and its decision will be upheld on appeal unless clearly erroneous.").

¶ 60 Given that the expert did not testify, and husband neither presented nor elicited any other testimony concerning the consulting business, it is apparent to us that the court was not persuaded by the expert report alone as to the value of the business. *Cf. People in Interest of S.E.G.*, 934 P.2d 920, 922 (Colo. App. 1997) ("The burden of proof generally rests upon the party who asserts the affirmative of an issue."). Thus, we may not disturb the court's findings as to the consulting business, *Amich*, 192 P.3d at 424, and the court may not otherwise revalue the business on remand, *see Medeiros*, ¶ 25.

## IV. Maintenance and Child Support

¶ 61    Because we are reversing the property division, we also reverse the portion of the permanent orders addressing maintenance and child support for the district court's reconsideration. *See In re Marriage of de Koning*, 2016 CO 2, ¶ 22 (when a district court revisits a property division, it must also reevaluate its maintenance and child support determinations because the issues are interdependent).  On remand, the court should consider the revised property division and the parties' present economic circumstances. *See Wells*, 850 P.2d at 697-99; *In re Marriage of Cardona*, 321 P.3d 518, 525 (Colo. App. 2010).  Accordingly, we decline to address the parties' respective contentions that the district court erred in determining wife's income for child support purposes.

## V. Disposition

¶ 62    Those portions of the permanent orders concerning the marital property division, maintenance, and child support are reversed. The remainder of the judgment is not before us and remains undisturbed.  The case is remanded to the district court to conduct further proceedings and reconsider the permanent orders consistent with this opinion.

JUDGE DUNN and JUDGE MOULTRIE concur.